UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
HONGXIA WANG,

Plaintiff,

               -against-                           Case No. 17-cv-4932 (lgs)

DEREK ENLANDER,

Defendant.
-------------------------------------------------------------------------X


**<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS</u>**


STANLEY K. SCHLEIN, ESQ.      LAW OFFICE OF SOTO & ASSOCIATES, P.C.
481 King Avenue                     778 Castle Hill Avenue
Bronx, New York 10464          Bronx, New York 10473
T:  (917) 359-3186                T:  (718) 931-2575
*Attorney for Defendant*         F:  (718) 931-1121
                                E:  <u>Marissa.Soto@bxadvocates.com</u>
                                *Attorney for Defendant*

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................. **6**

**STATEMENT OF FACTS** ........................................................................................ **7**

**STANDARD OF REVIEW** ...................................................................................... **11**

**ARGUMENT** .......................................................................................................... **12**

    **Plaintiff Fails to State an Involuntary Servitude Claim Under 18 U.S.C. §1584.** ........................... **12**

    **All Trafficking Victims Protection Act ("TVPA") Claims that Relate to Conduct Prior to June 29, 2007 Are Time Barred and Should Be Dismissed.** ........................................................... **13**

        All TVPA Claims that Relate to Conduct Prior to June 29, 2007 Are Time Barred and Should Be Dismissed Pursuant to 18 U.S.C. §1595(c)(1) .......................................................... 13

    **All TVPA Claims That Relate to Conduct After June 29, 2007, Fail to Allege the Facts Necessary for Involuntary Servitude or Forced Labor and Therefore, Cannot Support a Trafficking Finding** ........................................................................................................... **15**

        All TVPA Claims That Relate to Conduct After June 29, 2007, Fail to Allege Legally Cognizable Forced Labor or Trafficking Causes of Action. ................................................... 15

    **Common Law Fraud Claims Should Be Dismissed for (i) Being Time Barred by the Applicable New York Statute of Limitations and (ii) Failure to State of a Cause of Action Pursuant to Fed. R. Civ. Pro. 12(b)(6).** ................................................................................... **17**

        All Common Law Fraud Causes of Action Accruing Prior to June 29, 2011 Are Time Barred. ........ 17

        Assuming Any Non-Time Barred Common Law Fraud Claims Remain They Fail to Allege Justifiable Reliance. ...................................................................................... 19

    **New York Does Not Recognize Civil Conspiracy to Commit a Tort as an Independent Cause of Action; Such Claim Stands or Falls with the Underlying Tort.** ........................................... **20**

    **Breach of Contract Claims Must Be Dismissed as Time-Barred as to the Claims Prior to June 29, 2011.** ................................................................................................... **20**

        Breach of Contract Claims Accrue When the Breach Occurred, Not on the Date of Discovery of the Breach. .............................................................................................. 20

    **Quantum Meruit Claims Are Joined for Analysis Purposes with Unjust Enrichment.** ................. **21**

    **Unjust Enrichment Claims are Time Barred** ........................................................ **21**

Where the Remedy Sought Is Purely Monetary in Nature, Courts Construe the Suit as Alleging "Injury To Property" Within the Meaning of CPLR 214 (3), Which Has a Three-Year Limitations Period in the New York State. ...................................................................................................................21

Assuming, Arguendo, a Six Year Statute of Limitations, the Claims Are Time Barred as They Accrued When the Breach Took Place. .............................................................................................22

**CONCLUSION** ...............................................................................................................................**24**

## TABLE OF AUTHORITIES

**Cases**

*ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.*, 25 N.Y.3d 1043 (N.Y. 2015) ............................ 19

*Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427 (E.D.N.Y. Aug. 16, 2013)...................... 13

*Ambac Assur. Corp. v Countrywide Home Loans, Inc.*, 54 Misc. 3d 1215(A) (N.Y. Sup. Ct. Dec. 19, 2016)........................................................................................................................................ 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)...................................................................... 11

*Calicchio v. Sachem Cent. Sch. Dist.*, 185 F. Supp. 3d 303(E.D.N.Y. 2016) ................................... 12

*Calicchio v. Sachem Cent. Sch. Dist.*, 2015 U.S. Dist. LEXIS 139001 (E.D.N.Y. Oct. 13, 2015) ............................................................................................................................................ 12

*Cruz v. Maypa*, 773 F.3d 138 (4th Cir. 2014).............................................................................. 14

*DiMatteo v. Cosentino*, 71 AD3d 1430 (4th Dep't 2010).......................................................... 22

*Ditullio v. Boehm*, 662 F.3d 1091 (9th Cir. 2011).................................................................... 13

*Ely-Cruikshank Co., Inc., v. Bank of Montreal*, 81 N.Y.2d 399 (N.Y. 1993) ................................... 20

*Erbe v Lincoln Rochester Trust Co.*, 3 NY2d 321 (1957) ............................................................ 17

*Eurycleia Partners, LP v Seward & Kissel, LLP*, 12 NY3d 553 (N.Y. 2009).................................. 19

*Faber v. Metro. Life Ins. Co.*, 648 F.3d 98 (2d Cir. 2011)......................................................... 11

*Gorelick v. Vorhand*, 83 A.D.3d 893 (2nd Dep't 2011)............................................................. 18

*Guobadia v. Irowa*, 103 F.Supp.3d 325 (E.D.N.Y. 2015) .......................................................... 16

*Gutkowski v. Steinbrenner*, 680 F.Supp. 2d 602 (S.D.N.Y. 2010)..........................................20, 21, 22

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132 (N.Y. 2009) ............................ 22

*Immediato v. Rye Neck School Dist.*, 73 F. 3d 454 (2d Cir. 1996)........................................... 12

*In re Elevator Antitrust Litig.*, 502 F.3d 47 (2d Cir. 2007) ...................................................... 11

*Ingrami v. Rovner*, 45 AD3d 806 (2nd Dep't 2007)..........................................................22, 23

*Leongard v. Santa Fe Ind.*, 70 N.Y.2d 262 (N.Y. 1987)............................................21, 22, 23

*Muchira v. Al-Rawaf,* 850 F.3d 605 (4th Cir. 2017).......................................................15, 16

*Oluoch v. Orina*, 101 F. Supp.3d 325 (S.D.N.Y. 2015) ........................................................ 14

*Pericon v. Ruck*, 56 A.D.3d 635 (2nd Dep't 2008) ............................................................... 17

*Rolon v. Henneman*, 517 F.3d 140 (2d Cir. 2008) ................................................................ 11

*Sargiss v. Magarelli*, 12 N.Y.3d 527 (N.Y. 2009) ..........................................................17, 18

*Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82 (2d Cir. 2009) ............................................... 11

*Trepuk v. Frank*, 44 NY2d 723 (1978) ................................................................................. 17

*United States v. Kozminski*, 487 U.S. 931 (U.S. 1988)....................................................12, 13

*United States v. Shackney*, 333 F.2d 475 (2d Cir. 1964)...................................................... 12

*Varga v. Credit-Suisse*, 5 A.D.2d 289 (aff'd no opn 5 N.Y.2d 865) ................................... 21

*Velez v. Sanchez*, 693 F.3d 308 (2d Cir. 2012) .............................................................13, 16

*Williams-Guillaume v. Bank of America, N.A.*, 130 A.D.3d 1016 (2nd Dep't 2015)............17, 23

*Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527 (3d Cir. 2012).............................................. 13

*Zavala v. Wal-Mart Stores, Inc.*, 393 F.Supp.2d 295 (D.N.J. 2005)..................................... 12

**Statutes**

18 U.S.C. §1595(c)(1) .....................................................................................................12, 13

18 U.S.C.S. §1589(a) ............................................................................................................. 14

CPLR 213(8) .......................................................................................................................... 16

CPLR 214 (4) ......................................................................................................................... 21

# PRELIMINARY STATEMENT

1.      The Complaint is by and large time barred and any surviving claims fail to state a cause of action up on which relief may be granted even under the liberal review standard afforded complaints in connection with motions to dismiss.

2.      The Complaint is mainly based on the alleged interactions and relationship between a now long deceased non-party and the Plaintiff.  Approximately fifty-six (56) paragraphs of the Complaint pertain exclusively to events that took place between 1999 and 2006.  References to the Defendant during this period are attributions, speculations, inferences, and assumptions couched as facts.  The Complaint is so focused and geared toward the deceased non-party, it raises a plausible inference that the action was brought against the Defendant merely in an attempt to bootstrap clearly time barred claims against a long deceased non-party.  These claims and the facts upon which they are based cannot survive a motion to dismiss nor can they be cured by amendments to the pleading.

3.      Any claims that are arguably not time barred are skeletal and far from sufficient to push them from conceivable to plausible.  The facts alleged strain credulity in the sincerest sense.  It must be accepted that a reasonable person, who lived on their own from 1999 to 2011, was employed and financially independent could not have been enslaved.  That this person was then fired or escaped from such enslavement in 2003.  This reasonable person retained counsel but months after the attorney's demand letter was sent to her alleged former captor, sent the captor a bouquet of flowers with $1,500.00 in cash to apologize.  After that point, this reasonable person, who was college educated, independently employed and had her own apartment, would return to the company of such captor periodically to loan her captor money.  This reasonable person

would after the death of their captor resume enslavement to said captor's former spouse – despite being employed elsewhere and not being financially dependent on such person - based solely on such person's requests.

4.      Case law is clear that these facts are not actionable.

# STATEMENT OF FACTS

5.      The Plaintiff is a college-educated woman.  Complaint ("Compl.") ¶7.   She is married to a college-educated man, who still lives in China with their daughter. *Id*.

6.      The Plaintiff's husband was reliably employed, as his skill set was in demand prior to the Plaintiff leaving China.  *Id*.

7.      The Plaintiff's daughter was enrolled in school and learned to speak English.  Compl. ¶8.

8.      The Plaintiff was intelligent, and distinguishably so, earning herself distinction among the fellow parents of her daughter's classmates in China.  *Id*. at ¶8.

9.      In or around 1997 the Plaintiff made arrangements to immigrate to the United States.  *Id*. at ¶9.  She did so without the help of any employer, as she was unemployed when she arrived in the United States.  *Id*. at ¶10.

10.     The Plaintiff also, somehow, arranged the means of transportation available in the United States necessary to migrate from California to New York mere months after her arrival in the United States.  *Id*.

11.     The Plaintiff was able to secure steady employment at Rafael's Salon in January of 1999.

12.     The Plaintiff earned more than minimum wage at Rafael's Salon.  *Id*. at ¶11.  The Plaintiff earned $45.00 a day or $5.63 an hour.  The New York State minimum wage in 1999 was $4.25 an hour and became $5.15 in 2000.

13.    The Plaintiff met Caron Enlander (hereinafter "Caron" together with Defendant, the "Enlanders") when she was securely employed at Rafael's Salon. *Id*. at ¶12

14.    She began working with Caron part time in March of 1999. *Id*. at ¶16. She was allegedly promised $8.00 an hour to work with Caron on the one day a week she was not working at Rafael's Salon. *Id*.

15.    In April 1999, Caron allegedly offered the Plaintiff $80.00 an hour to work in her home daily after the Plaintiff was finished working at Rafael's Salon. *Id*. at ¶17.

16.    This arrangement is alleged to have continued with the Plaintiff working at both Rafael's Salon and with Caron until November 1999, when the Plaintiff was fired from Rafael's Salon.

17.    The Plaintiff at this time was living in her own home. *Id*. at ¶18, 54.

18.    The Plaintiff alleges that from March 1999 to December 1999, an eight-month period, she worked over 1,500 hours for the Enlanders and received $80.00 in payment from the Enlanders. *Id*. at ¶24. This amounts to $.05 an hour.

19.    This is alleged to have coincided with a period when the Plaintiff was (i) gainfully employed, presumably making more than minimum wage, and (ii) renting or otherwise in control of her own "home". *See* ¶¶11("Ms. Wang needed to go home to eat dinner"), ¶18 (". . . she would go home to eat a quick dinner . . ."), ¶54 (. . . during the entire relevant period of this complaint Ms. Wag rented her own apartment . . .").

20.    It is also alleged that the Plaintiff, while having only received $80.00 from Caron, was able to pay the Enlander's electric bill for $140.00 and their cellphone bill of $75.00 for a total of $215.00 in 1999. *Id*. at ¶24.

21.     The Plaintiff alleges that despite these events in 1999 that Plaintiff had "<u>no</u> reason to believe that the Enlanders would not honor their word that they would pay her." *Id.* ¶26 (emphasis added).

22.     The Plaintiff alleges that by Thanksgiving 1999 she was isolated by the Enlanders. *Id.* at ¶23.  However, this is directly contradicted in paragraph 27, in which the Plaintiff admits that she was communicating with her family and receiving funds from her brother and husband to cover her living expenses. *Id.* at ¶27.

23.     The Plaintiff's apartment was in Queens, New York. *Id.* ¶29.  The Enlanders' home is in New York, New York. *Id.* at ¶18.

24.     The Plaintiff alleges that during the period relevant to the Complaint she constantly traveled New York City unaccompanied by either Caron or the Defendant. *Id.* at ¶31.  She traveled to and from her apartment in Queens.  She traveled to perform the alleged errands for the Enlanders.

25.     For the entire period relevant to the Complaint, the Plaintiff admits to renting her own apartment. *Id.* at ¶54.  Plaintiff, however, alleges that through late January 2003, approximately three years after she stopped working at Rafael's Salon, she had only received $80.00 from the Enlanders.  Similarly, the Plaintiff alleges that in 2003, when she allegedly was not receiving any monies from employment, that she loaned the Enlanders $14,300.00. *Id.* at ¶68.

26.     In January 2003, it is alleged that Caron actually asked the Plaintiff to leave. *Id.* at ¶62.

27.     Plaintiff admits that she did in fact "leave" at that time. *Id.*

28.     Plaintiff admits that she refused Caron's later requests for her to return. *Id.*

29.     The Plaintiff admits to having legal counsel representing her in connection with these matters on or about February 19, 2003.  ¶63.

30.      In March of 2003, the Plaintiff again secured gainful employment of her own free will

and volition.  *Id*. at ¶65.  The Plaintiff's new job paid her approximately $3,000.00 a month.  *Id*.

Assuming a forty-hour work week, Plaintiff was earning approximately $18.75 an hour, or even

assuming an eighty-hour work week, $9.38 an hour in 2003.

31.      The Plaintiff alleges that she had adequate resources to devote $1,500.00 on flowers to be

delivered to the Enlanders.  *Id*.

32.      In return for the kindness in 2003, Caron allegedly gave the Plaintiff her wedding ring.

*Id*. at 66.

33.      The Complaint then alleges that the majority of the interaction between the Plaintiff and

Caron between 2003-2006 was through email or telephone contact and occasional visits when

the Plaintiff would drop off money to Caron at her business.  *Id*. at ¶¶67-69.

34.      In July 2006, the Plaintiff alleges that she was told by a concierge at the Enlanders'

building that Caron died two months prior.  *Id*. at ¶72.

35.      The Plaintiff alleges that she then reached out to Defendant and arranged a meeting with

him because she wanted to know more about the circumstances of Caron's death.  *Id*. at ¶73.

36.      The Plaintiff then alleges that she returned to work for the Defendant after Caron died,

despite the fact that she had still not be paid for the work she allegedly performed between 1999

and 2003.  *Id*. at ¶79.

37.      The Plaintiff alleges that the Defendant socially isolated her.  *Id*. at 84.  However, the

Plaintiff alleges in the same paragraph that she secured part-time employment with various other

employers during the same period.  *Id*.

38.      The Plaintiff alleges that between June 2011 and August 2011, the Plaintiff was offered

employment at the Defendant's medical office and promised $125 a session.  The Plaintiff

alleges that she performed five sessions but was only paid for three.  The Complaint then alleges

that after having allegedly worked thousands of hours without pay from 1999 through 2003, it

was this failure to pay that caused the Plaintiff to flee from the Defendant in August 2011.


# STANDARD OF REVIEW

39.     When considering motions to dismiss pursuant to Federal Rule of Civil Procedure Rule

12(b)(6) (hereinafter "FRCP 12(b)(6)"), courts should "draw all reasonable inferences in

plaintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether

they plausibly give rise to an entitlement to relief."  *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98,

104 (2d Cir. 2011) (quoting *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009).

40.     A plaintiff will survive a motion to dismiss if plaintiff alleges "enough facts to state a

claim to relief that is plausible on its fact."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (Twombly still

requires enough facts to take claims from conceivable to plausible).  The court is not bound to

accept conclusory allegations or legal conclusions masquerading as factual conclusions.  *Rolon v.*

*Henneman*, 517 F.3d 0140, 149 (2d Cir. 2008) (internal citations omitted).  Moreover, even if the

complaint contains sufficiently "well-pleaded" allegations, "only a complaint that states a

plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950

(2009).  A court may dismiss a claim as "factually frivolous" if the sufficiently well-pleaded

facts are "clearly baseless"—that is, if they are "fanciful," "fantastic," or "delusional." *Gallop v.*

*Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (*citing Denton v. Hernandez*, 504 U.S. 25, 32-33

(1992) (*quoting Neitzke v. Williams*, 490 U.S. 319, 325, 327, 328 (1989)) (quotation marks

omitted).

# ARGUMENT

**Plaintiff Fails to State an Involuntary Servitude Claim Under 18 U.S.C. §1584.**

41.     18 U.S.C. §1584 states in relevant part "Whoever knowingly and willfully holds to involuntary servitude or sells into any condition of involuntary servitude, any other person for any term, or brings within the United States any person so hold, shall be fine under this title or imprisoned not more than 20 years, or both . . .." 18 U.S.C. 1584(a) (2017).

42.     The Supreme Court has defined involuntary servitude for purposes of 18 U.S.C. § 1584, as conditions in which the victim is forced to work for master by actual or threatened physical or legal, but not psychological, coercion.  *United States v. Kozminski*, 487 U.S. 931, 952 (U.S. 1988) (relying on meaning in Thirteenth Amendment).  Courts, including the Second Circuit, have distinguished between labor compelled through threat of physical coercion and labor compelled merely by threat of exceedingly negative consequences, such as deportation.  *United States v. Shackney*, 333 F.2d 475, 486-87 (2d Cir. 1964) (finding threats of deportation do not rise to the level of involuntary servitude); *Zavala v. Wal-Mart Stores, Inc.*, 393 F.Supp.2d 295, 311 (D.N.J. 2005) *aff'd* 691 F.3d 527, 541 (3d Cir. 2012) ("Plaintiffs have not alleged that they did not have any way to avoid 'continued service or confinement.' Thus, the complaint fails to allege the predicate act of involuntary servitude."); *Calicchio v. Sachem Cent. Sch. Dist.*, 2015 U.S. Dist. LEXIS 139001 *6-7 (E.D.N.Y. Oct. 13, 2015) *citing Immediato v. Rye Neck School Dist.*, 73 F. 3d 454, 459 (2d Cir. 1996) (finding choice between complying with public high school labor demands or dropping out of said public high school and obtaining a high school equivalency certificate was a sufficient choice to preclude any involuntary servitude claims).  Employment accepted and maintained based on the election of the plaintiff is not recognized as

involuntary servitude.  *Kozminski*, 487 U.S. at 943 (involuntary servitude is found if victim had no available choice but to work or be subject to legal sanction).

43.     Plaintiff does not claim that she was forced to remain with the Enlanders once her alleged work was finished.  Plaintiff admits that she had her own home during the entire relevant period. Compl. ¶54.  The record demonstrates that Plaintiff often switched jobs, freely moving to different employers. Compl. ¶79.  Plaintiff never alleges that the Enlanders directly interfered with her other employers.  Plaintiff never alleges that she was financially dependent on the Enlanders.  Plaintiff never alleges that her immigration documents were confiscated by the Enlanders.  Plaintiff never alleges that Defendant threatened her with deportation.  Compl. ¶¶ 73-86.  Plaintiff's claims are legally insufficient to constitute involuntary servitude and should be dismissed pursuant to FRCP 12(b)(6).  *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 541 (3d Cir. 2012) (dismissing involuntary servitude claim despite deportation threats).

**All Trafficking Victims Protection Act ("TVPA") Claims that Relate to Conduct Prior to June 29, 2007 Are Time Barred and Should Be Dismissed.**
*All TVPA Claims that Relate to Conduct Prior to June 29, 2007 Are Time Barred and Should Be Dismissed Pursuant to 18 U.S.C. §1595(c)(1).*
44.     TVPA was enacted in 2000 and the amendment creating its civil cause of action was enacted only in December of 2003.  *Velez v. Sanchez*, 693 F.3d 308, 324 (2d Cir. 2012) (discussing retroactivity of civil remedy).  There is a well-established presumption against the retroactive application of legislation, including amendments creating a private cause of action. *Id*.  As the creation of a civil remedy increases a party's liability for previously occurring conduct, retroactive application is impermissible and a civil remedy is not applicable to any conduct occurring before December 19, 2003.  *Id*. at 325 (citing *Ditullio v. Boehm*, 662 F.3d 1091, 1100-2 (9th Cir. 2011).

45.     Plaintiff left the Enlanders in January or early February 2003.  Compl. ¶ 62.  Plaintiff retained legal counsel in or around February 19, 2003.  Compl. ¶ 63.  Therefore, Plaintiff cannot recover on her TVPA claims for any action that occurred prior to December 19, 2003.

46.     TVPA was further amended on December 23, 2008 to include a ten-year statute of limitations.  18 U.S.C. §1595(c)(1) ("No action may be maintained under this section unless it is commenced not later than the later of ten years after the cause of action arose.); *Id*.; *Cruz v. Maypa*, 773 F.3d 138, 143-44 (4th Cir. 2014) ("In 2008, Congress amended the TVPA to include a ten-year statute of limitations." (internal citations omitted)); *Oluoch v. Orina*, 101 F. Supp.3d 325, 329 (S.D.N.Y. 2015).  Prior to such amendment, the TVPA did not have an explicit statute of limitations and was governed by the four-year statute of limitations applicable to all civil actions arising under an Act of Congress enacted after December 1, 1990.  *Id*.  The extended ten-year statute of limitations is applicable to all claims that were not time barred on December 23, 2008. *Id*.

47.     All facts alleged in the Complaint related to events that took place between December 19, 2003 and December 23, 2004 are time barred as they were subject to a four-year statute of limitations and expired by the time the extension was enacted in 2008.  Thereafter, all conduct was subject to the ten-year statute of limitations under 18 U.S.C. §1595(c)(1).  All claims related to activity from December 23, 2004 through June 28, 2007 are time barred by operation of the ten-year statute of limitations set forth in 18 U.S.C. §1595(c)(1).  Paragraphs 11 through 70 relate exclusively to facts prior to June 28, 2007.  Compl. ¶¶11-70.

**All TVPA Claims That Relate to Conduct After June 29, 2007, Fail to Allege the Facts Necessary for Involuntary Servitude or Forced Labor and Therefore, Cannot Support a Trafficking Finding.**

*All TVPA Claims That Relate to Conduct After June 29, 2007, Fail to Allege Legally Cognizable Forced Labor or Trafficking Causes of Action.*

*Plaintiff fails to state a Forced Labor action under 18 U.S.C. §1589.*

48.      18 U.S.C. §1589 states in relevant part:

> Whoever knowingly provides or obtains the labor or services of a person by any one of . . . the following means:  (i) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint . . ..

18 U.S.C.S. §1589(a) (2017).

49.    "Serious harm" for purposes of this section is defined as:

> [A]ny harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, <u>to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or service in order to avoid incurring that harm</u>.

18 U.S.C.S. §1589(a)(2) (2017) (emphasis added).

50.    When considering whether an employer's conduct was sufficiently serious to coerce the victim to provide labor or services against her will it is a hybrid standard that while the vulnerabilities of the person are to be considered must review the alleged victim's acquiescence must be objectively reasonable under the circumstances as well.  *United States v. Rivera*, 799 F.3d 180, 186-87 (2d Cir. 2015); *Muchira v. Al-Rawaf*, 850 F.3d 605, 618 (4th Cir. 2017).   To rely upon some hidden emotional flaw or weakness unknown to the employer would raise various problems.  Only known objective conditions that make the victim especially vulnerable to pressure (such as youth or immigration status) bear on whether the employee's labor was obtained by forbidden means.  *Muchira*, 850 F.3d at 618.   The markers of forced labor situations are (i) squalid or otherwise intolerable living conditions, (ii) extreme isolation from family and

15

the outside world, (iii) threats of inflicting harm upon the victim or others (including threats of

legal process such as arrest or deportation, (iv) exploitation of the victim's lack of education and

familiarity with the English language, (v) confiscating travel documents, and (vi) tricked foreign

nationals into coming to the United States. *Id*. at 618-19 (internal citations omitted).

51.     The facts as presented in the Complaint fail to state any objectively reasonable basis for

the Plaintiff's acquiescence to (i) involuntary servitude, (ii) provide forced labor and services, or

(iii) Defendant's recruiting.  Here the Plaintiff was college educated and married to a man who

was college educated as well.  Compl. ¶7.  This is clearly not typical of other trafficking

situations where most are not highly educated.  *Cf. Guobadia v. Irowa*, 103 F.Supp.3d 325, 330

(E.D.N.Y. 2015) (high-school graduate); *Muchira v. Al-Rawaf*, 850 F.3d at 608 (did not progress

beyond the eight grade in her formal education); *Velez v. Sanchez*, 693 F.3d 308, 314 (2d Cir.

2012) (sixteen year old).  Here, the Plaintiff traveled to the United States on her own.  Compl.

¶10.  Here, the Plaintiff lived in her own apartment that she paid for allegedly without

Defendant's help. Compl. ¶54.  The Plaintiff admits to returning to her own home every night.

Compl. ¶80.  Here, the Plaintiff had not just factual knowledge related to the procedures of

proper lawful employment in the United States from her own experience working at a nail salon

but she also had unimpededly obtained legal counsel regarding her interactions with the

Enlanders.  Compl. ¶65, ¶63.  Further, the Complaint consistently contradicts its allegations of

isolation. Compl. ¶84.  The Complaint alleges that the Plaintiff was isolated but had part-time

employment with other employers. *Id*.  Based on the above, the Plaintiff has failed to state a

claim recognizable by the case law dictating TVPA claims.

**Common Law Fraud Claims Should Be Dismissed for (i) Being Time Barred by the Applicable New York Statute of Limitations and (ii) Failure to State of a Cause of Action Pursuant to Fed. R. Civ. Pro. 12(b)(6).**

*All Common Law Fraud Causes of Action Accruing Prior to June 29, 2011 Are Time Barred.*

52.     Pursuant to New York State law, a cause of action alleging fraud must be commenced within the greater of six years of the fraud or within two years from the time the Plaintiff discovered the fraud or could, with reasonable diligence have discovered it.  New York State Civil Practice Law and Rules ("CPLR") CPLR 213(8) (the time within which the action based upon fraud must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it); *Sargiss v. Magarelli*, 12 N.Y.3d 527, 532 (N.Y. 2009) (citing CPLR 213(8) see CPLR 203(g)); *Williams-Guillaume v. Bank of America, N.A.*, 130 A.D.3d 1016, 1017 (2nd Dep't 2015) (citing CPLR 213(8)).   "The two-year period begins to run when the circumstances reasonably would suggest to the plaintiff that he or she may have been defrauded, so as to trigger a duty to inquire on his or her part." *Williams-Guillaume*, 130 A.D.3d at 1017 (quoting *Pericon v. Ruck*, 56 A.D.3d 635, 636 (2nd Dep't 2008).  Specifically, the inquiry as to whether a plaintiff could, with reasonable diligence, have discovered the fraud turns on whether the plaintiff was "possessed of knowledge of facts from which [the fraud] could be reasonably inferred" *Sargiss v. Magarelli*, 12 N.Y.3d at 532 (emphasis added) (citing *Erbe v Lincoln Rochester Trust Co.*, 3 NY2d 321, 326, (1957)). Generally, knowledge of the fraudulent act is required and mere suspicion will not constitute a sufficient substitute.  *Id*.  Where it does not conclusively appear that a plaintiff had knowledge of facts from which the fraud could reasonably be inferred, a complaint should not be dismissed on motion and the question should be left to the trier of the facts.  *Id*. (citing *Trepuk v. Frank*, 44 N.Y.2d 723, 725 (1978)).   However, the test as to when a plaintiff should have known is an

objective one.  *Gorelick v. Vorhand*, 83 A.D.3d 893, 893-94 (2nd Dep't 2011) ("plaintiff will be held to have discovered the fraud when it is established that they were possessed of knowledge of facts from which the fraud could be reasonably inferred." (internal citations omitted)).

53.       The relevant inquiry to determine whether an objective plaintiff could, with reasonable diligence, have discovered the fraud depends on whether the plaintiff had actual knowledge of facts from which the fraud could be reasonably inferred.  *Sargiss v. Magarelli*, 12 N.Y.3d at 532. It is not required that a plaintiff had a legal determination of fraud to count as discovery, just the facts from which the fraud could be inferred.  The Complaint clearly sets forth that (i) the Plaintiff at all times relevant to the common law fraud claim was a person of at the least ordinary intelligence, (Compl. ¶7), who could have by the exercise of such intelligence have ascertained the truth, and (ii) that the facts alleged were such to give her substantial basis to infer such fraud. Compl. ¶¶ 24; 70.

54.       The Complaint clearly sets forth that at all times relevant in the Complaint, the Plaintiff was a college educated woman.  Complaint ¶7.   The Plaintiff was admittedly successful and intelligent earning herself distinction among her contemporaries in China.  *Id*. at ¶8.  She was similarly savvy enough to independently arrange and manage her immigration from China to the United States in the first instance, as she arrived without the help of an employer.  *Id*. at ¶¶ 9-10. She was intelligent enough and familiar enough with the means of transportation available in the United States to migrate from California to New York mere months after her arrival in the United States.  *Id*.  She had adequate success and resourcefulness to secure and maintain her own apartment, which she maintained at all times relevant to the Complaint.

55.       As alleged in the Complaint the Plaintiff allegedly began being promised payment from Caron Enlander in March of 1999, approximately 18 years, 3 months, and 28 days prior to the

date the Complaint was filed.  As alleged in the Complaint the Plaintiff allegedly began being promised payment from the Defendant in July of 2006, approximately 10 years, 11 months, 13 days prior to the date the Complaint was filed.  The Plaintiff had actual knowledge of all of these facts and it strains credulity to allege that fraud cannot be reasonably inferred from such facts.

56.     Viewing the Complaint in the light most favorable to the Plaintiff, it is clear that conduct occurring before June 29, 2011 cannot form the basis of a viable common law fraud claim at this time and should be dismissed in toto.

*Assuming Any Non-Time Barred Common Law Fraud Claims Remain They Fail to Allege Justifiable Reliance.*

57.     Under New York State law, an essential element which must be plead is justifiable reliance by a plaintiff.  *Eurycleia Partners, LP v Seward & Kissel, LLP*, 12 N.Y.3d 553, 559, (N.Y. 2009) ("The elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages.").  It is well settled that if the facts represented are not matters peculiarly within the defendant's knowledge, and the plaintiff has the means available to it of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation the plaintiff must make use of those means, or it will not be heard to complain that it was induced to enter into the transaction by misrepresentations.  *Ambac Assur. Corp. v Countrywide Home Loans, Inc.*, 54 Misc. 3d 1215(A) (N.Y. Sup. Ct. Dec. 19, 2016) (citing *ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.*, 25 N.Y.3d 1043, 1044 (N.Y. 2015) (internal citations omitted)).

58.     Here, the Complaint clearly alleges a number of facts known to the Plaintiff at the time of any non-time-barred fraud claims that preclude justifiable reliance as a matter of law and the Complaint contains no allegations to rehabilitate such reliance.  The Plaintiff is clearly of ordinary intelligence and had access to the alleged history of non-payment prior to June 29, 2011

to indicate the "truth or real quality of the subject of the representation" allegedly made by the Defendant that he would pay her for any work performed between June 29, 2011 and August 2011 when she stopped interacting with the Defendant.  Compl. ¶ 85.  The Plaintiff cannot now be heard to use both the alleged long history of non-payment as a sword and a shield.

59.     As a result, even the common law fraud claims that arguably not time-barred must be dismissed for failing to plead justifiable reliance on the alleged material misrepresentations.

### New York Does Not Recognize Civil Conspiracy to Commit a Tort as an Independent Cause of Action; Such Claim Stands or Falls with the Underlying Tort.

60.     A claim of civil conspiracy to commit a tort is not sustainable if the underlying tort is dismissed.  *Scott v. Fields*, 85 A.D.3d 756, 757 (2nd Dep't 2011) ("New York does not recognize civil conspiracy to commit a tort as an independent cause of action; rather such a claim stands or falls with the underlying tort").  As stated above, all the common law fraud claims the allegedly involve the Defendant and Caron are time barred by the statute of limitations under either the six-year or two-year statute of limitations.

61.     It is admitted by the Plaintiff that Caron died in May of 2006, approximately 11 years, 1 month, 3 days prior to the date the Complaint was filed.  Therefore, any conspiracy claims related to an agreement between the Defendant and Caron are time barred.

### Breach of Contract Claims Must Be Dismissed as Time-Barred as to the Claims Prior to June 29, 2011.
*Breach of Contract Claims Accrue When the Breach Occurred, Not on the Date of Discovery of the Breach.*

62.     In New York, a breach of contract cause of action accrues at the time of the breach though no damage occurs until later.  *Ely-Cruikshank Co., Inc., v. Bank of Montreal*, 81 N.Y.2d 399 (N.Y. 1993) (internal citations omitted); *Gutkowski v. Steinbrenner*, 680 F. Supp. 2d 602, 615 (S.D.N.Y. 2010) (statute of limitations for contract is six years, and it accrues upon breach).

Knowledge of the occurrence of the wrong on the part of the plaintiff is not necessary to start the statute of limitations running in a contract action. *Id*. at 403 (citing *Varga v. Credit-Suisse*, 5 A.D.2d 289, 292 (*aff'd no opn* 5 N.Y.2d 865)).

63.     The Complaint clearly alleges that the verbal contract, if any, was made between Caron and the Plaintiff.  The Complaint contains no allegation of any verbal agreement between the Defendant and the Plaintiff prior to July 2006.  Instead the Complaint makes conclusory references and suppositions regarding the Defendant's knowledge of a verbal agreement with Caron without more.  Therefore, the two parties to the alleged initial agreement set forth in Complaint ¶121 were the Plaintiff and Caron.  As a result, any alleged breach of such agreement through Caron's failure to pay must have occurred prior to Caron's death in May of 2006. Therefore, the six-year statute of limitations has expired on any claims related to such breach.

64.     Further, Defendant could not have reaffirmed the alleged implied contract that was had between Caron and the Plaintiff because no consideration was given in exchange for such alleged promise.

## Quantum Meruit Claims Are Joined for Analysis Purposes with Unjust Enrichment.

65.     Under New York law, unjust enrichment and quantum meruit clams "are analyzed together as a single quasi-contract claim." *Gutkowski*, 680 F. Supp. 2d at 613 (internal citations omitted).

## Unjust Enrichment Claims are Time Barred.
*Where the Remedy Sought Is Purely Monetary in Nature, Courts Construe the Suit as Alleging "Injury To Property" Within the Meaning of CPLR 214 (3), Which Has a Three-Year Limitations Period in the New York State.*

66.     The choice of the applicable statute of limitations in New York State depends on the substantive remedy sought. *Leongard v. Santa Fe Ind.*, 70 N.Y.2d 262, 266 (N.Y. 1987)

(applying six-year statute of limitations when equitable remedy sought); *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139 (N.Y. 2009) ("Where the remedy sought is purely monetary in nature, courts construe the suit as alleging "injury to property" within the meaning of CPLR 214 (4), which has a three year limitations period.") (internal citations omitted); *Ingrami v. Rovner*, 45 AD3d 806, 808 (2nd Dep't 2007) (applied three-year statute of limitations to unjust enrichment claim).  In instances where the relief sought is monetary in nature, a three-year statute of limitations is imposed pursuant to New York State Civil Practice Law and Rules ("CPLR") 214(3).  *Id.* (applying three-year statute of limitations to unjust enrichment claim); *DiMatteo v. Cosentino*, 71 A.D.3d 1430, 1431 (4th Dep't 2010) (applying three-year statute of limitations to unjust enrichment claim).

67.   The Complaint herein clearly seeks strictly monetary relief in connection with the Unjust Enrichment claim.  Complaint at ¶134 respectively.   The explicit relief requested is "compensatory damages . . .".  Complaint at pg. 29.   There is no request included or referenced seeking equitable relief.

68.   The relief sought as a result of the Unjust Enrichment claim is subject to the three-year statute of limitations which lapsed under any interpretation of the facts alleged at the latest on August 30, 2014.

*Assuming, Arguendo, a Six Year Statute of Limitations, the Claims Are Time Barred as They Accrued When the Breach Took Place.*

69.   Assuming, *arguendo*, that the proper statute of limitations is six-years pursuant to CPLR 213(1) or (2).  *Leongard v. Santa Fe Ind.*, 70 N.Y.2d at 266; *Gutkowski v. Steinbrenner*, 680 F. Supp. 2d 602, 615 (statute of limitations for quasi-contract claims accrues upon breach).  Unjust enrichment claims or quasi-contract claims accrue for statute of limitations purposes upon the occurrence of the alleged wrongful act giving rise to the duty of restitution, i.e. the breach.

*Ingrami v. Rovner*, 45 A.D.3d at 808 ("The statute of limitations on an unjust enrichment claim begins to run upon the occurrence of the wrongful act giving rise to the duty of restitution"); *Williams-Guillaume v. Bank of America, N.A.*, 130 A.D.3d 1016 (2nd Dep't 2015) (occurrence of the alleged wrongful act governs when statute of limitations begins).  In *Ingrami*, the court found the action for unjust enrichment in connection with alleged investment induced by material misrepresentations to have accrued when the investment was made rather than when the misrepresentation was discovered. *Id*.  In *Williams-Guillaume*, a case involving allegedly forged 2007 loan documents discovered in 2013, the unjust enrichment claim was held to accrue in 2007 when the loan was issued.  *Williams-Guillaume v. Bank of America,* 130 A.D.3d at 1017 (" . . . began to run in February 2007, upon the occurrence of the alleged wrongful act . . .").

70.     All the conduct, conjecture, and narrative alleged to have taken place prior to the death of Caron in 2006 is irrelevant to any surviving unjust enrichment or quantum meruit claim.  All facts alleged related to the alleged monies loaned are well outside the statute of limitations period, namely, 2003, 2004, 2005, and 2006.  Compl. ¶68.  Viewing the Complaint in the light most favorable to the Plaintiff, any unjust enrichment or quantum meruit claims are limited to those accruing during the period of June 29, 2011 to August 2011.   All other facts and characterizations before that date are irrelevant.

# CONCLUSION

71.    In conclusion, the Plaintiff has not carried her burden and Defendant respectfully

requests:

- All Counts 1, 2, and 3 stemming from conduct predating June 29, 2007 be dismissed as time barred;

- Counts 1, 2, and 3 claims stemming from conduct after June 29, 2007 be dismissed pursuant to FRCP §12(b)(6), failure to state a claim upon which relief may be granted;

- Count 4 claims stemming from conduct prior to June 29, 2011 be dismissed as time barred;

- Count 4 claims stemming from conduct after June 29, 2011 be dismissed for failure to state a cause of action pursuant to FRCP §12(b)(6);

- Count 5 be dismissed pursuant to FRCP §12(b)(6), failure to state a claim upon which relief may be granted;

- Count 6 claims stemming from conduct prior to June 29, 2011 be dismissed as time barred;

- All Count 7 and 8 claims be dismissed as time barred or alternatively, those claims stemming from conduct prior to June 29, 2011 be dismissed as time barred;


Dated:  Bronx, New York
         August 7, 2017

/s/  Stanley K. Schlein
Stanley K. Schlein, Esq. (SS0634)
481 King Avenue
Bronx, New York 10464
T:  (917) 359-3186

/s/Marissa Soto
By:  Marissa Soto (MS9866)
LAW OFFICE OF SOTO & ASSOCIATES, P.C.
778 Castle Hill Avenue
Bronx, New York 10473
T:  (718) 931-2575
F:  (718) 931-1121

E:  Marissa.Soto@bxadvocates.com