UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HONGXIA WANG,

                                    Plaintiff,          No. 17-cv-4932 (LGS)

            -against-

DEREK ENLANDER,

                                    Defendant.

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

S. Sherry Xia
Jordan M. Smith
AKERMAN LLP
666 Fifth Avenue, 20th Floor
New York, NY 10103
Telephone: (212) 880-3800
Facsimile: (212) 905-6400
sherry.xia@akerman.com
jordan.smith@akerman.com

-and-

Dahsong Kim
ASIAN AMERICAN LEGAL DEFENSE AND
EDUCATION FUND
99 Hudson Street, 12th Floor
New York, NY 10013
Telephone: (212) 966-5932
Fascimile: (212) 966-4303
skim@aaldef.org

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

I.    INTRODUCTION ................................................................................................ 1

II.   LEGAL STANDARD .......................................................................................... 1

III.  ARGUMENT ....................................................................................................... 2

    A.  Ms. Wang Has Pled a Claim for Involuntary Servitude Under 18 U.S.C. §
        1584 Where Mr. Enlander Threatened Her with Physical and Legal
        Coercion (COUNT 1) ................................................................................. 2

    B.  The TVPRA Claims Prior to June 29, 2007 Are Timely (COUNTS 1-3) ............ 4

        1.  Plaintiff's claims accrued in August 2011 ................................................ 4

        2.  Plaintiff's claims are also equitably tolled. ............................................... 6

    C.  All TVPRA Claims Relating to Conduct After June 29, 2007 Are
        Sufficiently Pled (Counts 1-3) ................................................................... 8

        1.  Conduct after June 29, 2007 is connected to entirety of the trafficking
            scheme that spanned from the initial recruitment of Ms. Wang to work
            for the Enlanders in 1999, as discussed in Section B, supra. ........................... 8

        2.  Even looking at defendant's conduct after June 29, 2007, sufficient
            facts are pled for claims of involuntary servitude and forced labor
            under the liberal federal pleading standards. ............................................... 9

    D.  Ms. Wang's Common Law Fraud and Conspiracy Claims Are Timely and
        Properly Pled (Counts 4-5) ....................................................................... 12

        1.  Ms. Wang's Common Law Fraud and Conspiracy Claims are Timely .......... 12

        2.  Ms. Wang pleads justifiable reliance ...................................................... 13

    E.  Ms. Wang's Breach of Contract Claims are Timely (Count 6) ........................... 14

    F.  Ms. Wang's Quasi-Contract Claims Are Likewise Timely under the Six-
        Year Statute of Limitations (Counts 7-8) ...................................................... 15

        1.  The Six Year Statute of Limitations Applies to Ms. Wang's Quasi-
            Contract Claims ................................................................................. 15

        2.  The Quasi-Contract Claims Accrued Each Time Mr. Enlander
            Promised Repayment ........................................................................... 16

IV.  CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABKCO Music & Records Inc. v. Chimeron LLC*,
    517 Fed. Appx. 3 (2d Cir. 2013) ...............................................................................14

*Aguirre v. Best Care Agency, Inc.*,
    961 F. Supp. 2d 427 (E.D.N.Y. 2013) ....................................................................9, 12

*Antonatos v. Waraich*,
    No. 12-CV-1905, 2013 U.S. Dist. LEXIS 121485 (D.S.C. Aug. 27,
    2013) .......................................................................................................................11, 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................10

*Baoanan v. Baja*,
    627 F. Supp. 2d 155 (S.D.N.Y. 2009) ..........................................................................4

*Beller v. William Penn Life Ins. Co. of New York*,
    8 A.D.3d 310 (N.Y. App. Div. 2004) .........................................................................14

*Brunetti v. Musallan*,
    11 A.D.3d 280 (N.Y. App. Div. 2004) .......................................................................13

*Caruso v. Malang*,
    250 A.D.2d 800 (N.Y. App. Div. 1998) .....................................................................14

*Corporate Trade, Inc. v. Golf Channel*,
    563 Fed. Appx. 841 (2d Cir. 2014) ..............................................................................2

*Cruz v. Maypa*,
    773 F.3d 138 (4th Cir. 2014) ...............................................................................4, 5, 7

*DiMatteo v Cosentino*,
    71 A.D.3d 1430 (N.Y. App. Div. 2010) .....................................................................15

*Franco v. Diaz*,
    51 F. Supp. 3d 235 (E.D.N.Y. 2014) ..................................................................3, 7, 11

*Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College*,
    128 F.3d 58 (2d Cir. 1997)............................................................................................1

*Helfland v. Sessler*,
    194 Misc. 2d 38 (Civ. Ct., N.Y. County 2002).........................................................16

*In re S. African Apartheid Litig.*,
    617 F. Supp. 2d 228 (S.D.N.Y. 2009)..........................................................................6

*Ingrami v Rovner*,
    45 AD3d 806 (N.Y. App. Div. 2007) ...............................................................15, 16

*Kiwanuka v. Bakilana*,
    844 F. Supp. 2d 107 (D.D.C. 2012) ..........................................................................7

*Lama v. Malik*,
    192 F. Supp. 3d 313 (E.D.N.Y. 2016) ...............................................................3, 5, 6

*Lim v. Kolk*,
    111 A.D.3d 518 (N.Y. App. Div. 2013) ..................................................................12

*Manolov v. Borough of Manhattan Community College*,
    952 F. Supp. 2d 522 (S.D.N.Y. 2013)......................................................................2

*Muchira v. Al-Rawaf*,
    850 F.3d 605 (4th Cir. 2017) ...................................................................................10

*Prada v. Banco Industrial de Venezuela, C.A.*,
    753 F.3d 62 (2d Cir. 2014)..........................................................................................6

*Segal v. Cooper*,
    49 A.D.3d 467 (N.Y. App. Div. 2008) ....................................................................13

*Sirico v. F.G.G. Productions, Inc.*,
    71 A.D.3d 429 (1st Dep't 2010) .......................................................................14, 16

*Squitieri v. Trapani*,
    107 A.D.3d 688 (N.Y. App. Div. 2013) ..................................................................12

*U.S. v. Djoumessi*,
    538 F.3d 547 (6th Cir. 2008) .....................................................................................3

*United States v. Dann*,
    652 F.3d 1160 (9th Cir. 2011) .................................................................................10

*United States v. Farrell*,
    563 F.3d 364 (8th Cir. 2009) .....................................................................................4

*United States v. Kozminski*,
    487 U.S. 931 (1988)........................................................................................2, 9, 10

*United States v. Rivera*,
    799 F.3d 180 (2d Cir. 2015)......................................................................................9

*US v. Dann*,
     No. C 08-00390, 2009 U.S. Dist. LEXIS 122774 (N.D. Cal. Dec. 23,
     2009) ..................................................................................................................11

*Valverde v. Stinson*,
     224 F.3d 129 (2d Cir. 2000)...............................................................................7

*Walia v. Veritas Healthcare Solutions, L.L.C.*,
     No. 13-CV-6935, 2015 U.S. Dist. LEXIS 105429 (S.D.N.Y. Aug. 11,
     2015) ..................................................................................................................12

*Williams-Guillaume v. Bank of America, N.A.*,
     130 A.D.3d 1016 (N.Y. App. Div. 2015) ..............................................................16

**Statutes**

18 U.S.C. § 1584 .........................................................................................................2

18 U.S.C. §1589 .......................................................................................................9, 11

18 U.S.C. § 1595 .........................................................................................................8

Trafficking Victims Protection Reauthorization Act ................................................ *passim*

**Rules**

Rule 12(b)(6)................................................................................................................2

Plaintiff Hongxia Wang respectfully submits this memorandum of law in opposition to defendant Derek Enlander's motion to dismiss the complaint.

## I.    INTRODUCTION

From 1999 through 2011, Mr. Enlander devised a scheme, plan, and pattern to manipulate Ms. Wang into a perpetual state of fear and indentured servitude.  (Compl. ¶¶ 34, 41, 43, 55, 64, 69-86).  He initially worked in concert with his now-deceased wife, Caron Enlander, to entrap Ms. Wang, subjecting her to threats, surveillance, and assault (Compl. ¶¶ 10-70).  He then continued to deploy the same tactics of emotional and physical coercion to exploit Ms. Wang after his wife's death (Compl. ¶¶ 69, 71-86). There was no break in this scheme until Ms. Wang escaped from Mr. Enlander in August 2011, when she could finally seek full legal redress without fear of retribution.

Mr. Enlander moves to dismiss all of Ms. Wang's claims on statute of limitations grounds.  He also claims the complaint does not adequately plead claims under the Trafficking Victims Protection Reauthorization Act (**TVPRA**) and for fraud.  All of these arguments fail, because they effectively ask the Court to adopt the most narrow and limited view of the complaint in a light most favorable to Mr. Enlander.  He seeks to have Ms. Wang's allegations of a comprehensive scheme spanning over a decade truncated into various fragmented periods of time without any basis in law or fact.

## II.    LEGAL STANDARD

On a motion to dismiss, the court's task is "necessarily a limited one." *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College*, 128 F.3d 58, 62 (2d Cir. 1997). The issue is not whether a plaintiff will ultimately prevail on its claims. *Id.* Rather, on a Rule 12(b)(6) motion, the court's sole task is to determine whether "it appears beyond doubt that the plaintiff can prove no set of facts, consistent with its complaint, . . . that

would entitle it to relief." *Corporate Trade, Inc. v. Golf Channel*, 563 Fed. Appx. 841, 841 (2d Cir. 2014).  It is black letter law that, in ruling on such a motion, the Court "must accept as true all factual allegations in the complaint, and must draw all reasonable inferences in favor of the plaintiff." *Manolov v. Borough of Manhattan Community College*, 952 F. Supp. 2d 522, 531 (S.D.N.Y. 2013).

### III.   ARGUMENT

**A.    Ms. Wang Has Pled a Claim for Involuntary Servitude Under 18 U.S.C. § 1584 Where Mr. Enlander Threatened Her with Physical and Legal Coercion (COUNT 1)**

Mr. Enlander contends Ms. Wang fails to state an involuntary servitude claim because she merely faced the "threat of exceedingly negative consequences," rather than the threat of physical or legal coercion as required by the law.  (Def's Memo ¶ 42 (citing examples of "labor compelled by threat of exceedingly negative consequences" that do not rise to the level of involuntary servitude)).  Mr. Enlander, in conclusory fashion, argues that Ms. Wang has no claim for involuntary servitude because she accepted and remained working for the Enlanders of her own volition.  (*Id.*)  This is nonsensical and unsupported by the plain allegations of the complaint.

The Supreme Court recognizes "involuntary servitude" as a condition of servitude in which the victim is forced to work by the "use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process" and "encompasses those cases in which the defendant holds the victim in servitude by placing the victim in fear of such physical restraint or injury or legal coercion." *United States v. Kozminski,* 487 U.S. 931, 952 (1988).

Mr. Enlander cherry picks facts in the complaint that narrowly demonstrate freedom of movement to argue the absence of coercion, without also recognizing the

violent threats of physical harm and deportation that rendered seeming freedom of movement meaningless. *See Franco v. Diaz,* 51 F. Supp. 3d 235, 246-47 (E.D.N.Y. 2014) (declining dismissal of claims under the TVPRA where plaintiff could leave unaccompanied because "[t]he TVPRA does not require that plaintiffs be kept under literal lock and key."); *Lama v. Malik,* 192 F. Supp. 3d 313, 316 (E.D.N.Y. 2016) (declining summary judgment where plaintiff was free to come and go and was "given access to a phone and freely communicated with her own family in Nepal"); *see also*, *U.S. v. Djoumessi*, 538 F.3d 547, 552 (6th Cir. 2008) (involuntary servitude can be established merely if "labor was involuntary for at least some portion of the [victim's] stay"). The TVPRA was specifically enacted "to reach cases in which persons are held in a condition of servitude through nonviolent coercion." *Franco*, 51 F. Supp. 3d at 246 (allegations of threats of deportation sufficient to make out TVPRA claim). The Enlanders worked together in a scheme to exploit the vulnerabilities of Ms. Wang to hold her in a state of involuntary servitude.

The Enlanders monitored and demanded an accounting of Ms. Wang's time at all times so that even though she was permitted to go to her apartment in the mornings, she was not actually independent. (Compl. ¶¶ 49-51, 54, 84). For all intents and purposes, Ms. Wang lived with the Enlanders. She slept at the Enlanders' home almost every day and was permitted to go home only for a few hours in the morning for a fresh set of clothes. (Compl. ¶ 29). Ms. Wang lived and worked for the couple during the summers when they spent long weekends in the Hamptons. (Compl. ¶¶ 21-22). In both the Manhattan and Hamptons homes, Ms. Wang was denied basic dignity. She was forced to sleep on the couch or on the floor, and was denied food and medical attention. (Compl.

3

¶¶ 55-56); *cf., Baoanan v. Baja,* 627 F. Supp. 2d 155 (S.D.N.Y. 2009) (plaintiff was forced to sleep on basement floor, given little food, and verbally abused and denigrated). The Enlanders isolated Ms. Wang by directly interfering with her outside employment and forced Ms. Wang into social isolation by breeding mistrust of anyone but them. (Compl. ¶¶ 19-23, 29, 84); *cf. United States v. Farrell*, 563 F.3d 364 (8th Cir. 2009) (social isolation and intimidation, despite absence of explicit threats of violence and death, sufficient for claims under TVPA).

The Enlanders created a climate of fear and intimidation.  Caron frequently displayed her explosive temper in fits of rage, spewing demeaning insults, shaming, and belittling her, while Derek watched.  (Compl. ¶¶ 34-37, 41).  The Enlanders also used sexual assault and abuse to shock and humiliate Ms. Wang and to further bring her under their control.  (Compl. ¶¶ 43-47, 77).  It was under these circumstances that the Enlanders made repeated threats to kill Ms. Wang and harm her family.  Mrs. Enlander threatened to kill Ms. Wang when she made mistakes or attempted to leave the Enlanders' employ.  (Compl. ¶¶ 34-35, 39-41).  Derek employed similar techniques, asking Ms. Wang if she wanted to die.  (Compl. ¶ 80.)  He routinely assaulted her.  (Compl. ¶ 77.)  The Enlanders owned a gun, all of which gave Ms. Wang reason to fear that the Enlanders had the means to kill or otherwise severely physically harm her.  (Compl. ¶ 40.)

**B.     The TVPRA Claims Prior to June 29, 2007 Are Timely (COUNTS 1-3)**

1.     *Plaintiff's claims accrued in August 2011*

A plaintiff's claims under the TVPRA do not accrue until the victim has escaped from her traffickers and is free to seek legal redress.  *See Cruz v. Maypa*, 773 F.3d 138, 146 (4th Cir. 2014) (taking facts "in light most favorable to [plaintiff], this virtual imprisonment prevented her from seeking legal redress until at least the date of her

escape"); *Lama v. Malik*, 192 F. Supp. 3d 313, 321 (E.D.N.Y. 2016) ("claim accrued when she left the Malik's home in 2008").  Construing the complaint in the light most favorable to Ms. Wang, Ms. Wang did not escape from Mr. Enlander's abuse until 2011. (Compl. ¶ 86.)  Mr. Enlander's conclusory claim that "[p]laintiff left the Enlanders in January or early February 2003" (Def. Mem. of Law ¶ 45) overlooks the complete circumstances of Ms. Wang's servitude.  This is especially the case when the complaint makes clear that Ms. Wang continued to be under Mr. Enlander's "virtual imprisonment" until 2011.  *See Cruz*, 773 F.3d at 146 (*citing Deressa v. Gobena,* No. 1:05-cv-1334, 2006 WL 335629 (E.D. Va. Feb. 13, 2006) (plaintiff was held as a "virtual prisoner" by defendants who threatened her with deportation).  (*See* Compl. ¶¶ 64 (threats of deportation), 69 (continued surveillance by email and demands for money), 71-86 (continued assertion of power over Ms. Wang).)

Mr. Enlander's attempt to truncate Ms. Wang's claims into separate causes of action under the TVPRA should be ignored when every act alleged in the complaint was part of overarching scheme, plan, and pattern intended to keep Ms. Wang in a constant state of fear and submission, for the benefit of Mr. Enlander.  To break Ms. Wang's TVPRA claim into four separate causes of action[1] defies logic, and would improperly call for a reading of the complaint in a light most favorable to the defendant, as the uncompensated labor Ms. Wang provided through the period of 1999 through 2011 can only be understood as part of an overall scheme of manipulation and coercion by Mr.

---

[1] Without any legal basis, and simply because the math works in his favor, Mr. Enlander truncates the claims into (1) pre-December 19, 2003 ones, (2) December 19, 2003 through December 23, 2004 ones, (3) December 23, 2004 through June 28, 2007 ones, and (4) post-June 28, 2007 ones.  (Def. Mem. of Law, ¶¶ 45, 47.)  His nonsensical segmentation of Ms. Wang's claims must be rejected.

Enlander. One particular running pattern alleged in the complaint is that Mr. Enlander knowingly harbored an undocumented immigrant during the early years of Ms. Wang's employment at the Enlander's home (Compl. ¶ 59), and continued to use Ms. Wang's immigration status to extract labor and benefits from her (Compl. ¶ 64). There was no break in Mr. Enlander's exploitation of Ms. Wang between 1999 and 2011.

Ms. Wang ultimately freed herself from Mr. Enlander's scheme in August 2011 when she was able to seek proper legal redress, including the legal aid of undersigned *pro bono* counsel in 2017. As a result, her claims did not accrue until 2011, giving her until 2021 to file suit under the TVPRA.

### 2. *Plaintiff's claims are also equitably tolled.*

Assuming Ms. Wang's claims could be truncated, any claims prior to June 29, 2007 are equitably tolled.[2] "To qualify for equitable tolling, the plaintiff must establish that extraordinary circumstances prevented her from filing her claim on time, and that she acted with reasonable diligence through the period she seeks to toll." *Prada v. Banco Industrial de Venezuela, C.A.*, 753 F.3d 62, 71 (2d Cir. 2014); *see also*, *In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 287 (S.D.N.Y. 2009) ("court must deny a motion to dismiss based on the statute of limitations unless all assertions of the complaint, as read with required liberality, would not permit" plaintiffs to prove statute was tolled).

Courts have often tolled statutes of limitations for victims of trafficking, who, like Ms. Wang, lack the knowledge, language skills, and immigration status to freely pursue

---

[2] These claims were also "live" when the 2008 amendment to the TVPRA extended the statute of limitations to ten years, and are, therefore, still timely. *See Lama*, 192 F. Supp. 3d at 323 ("since Plaintiff's claims were still alive at the time the amended statute of limitations was enacted, it does not impair any parties' rights to apply it retroactively, since it does not revive stale or expired claims").

their claims.[3]  In *Franco v. Diaz*, 51 F. Supp. 3d 235 (E.D.N.Y. 2014), the court found that the defendants' isolation of the plaintiff, including threats of deportation, were sufficient to equitably toll a statute of limitations.  Similarly, in *Cruz,* the Fourth Circuit concluded the statute of limitations under the TVPRA should be tolled where the defendants monitored plaintiff's communications and threatened her with deportation and imprisonment.  773 F.3d at 145-46; *see also Kiwanuka v. Bakilana*, 844 F. Supp. 2d 107, 118 (D.D.C. 2012).

Mr. Enlander thwarted Ms. Wang's attempt to file suit through fraud, coercion, and deceit.  While an attorney helped Ms. Wang draft an initial demand letter to the Enlanders in 2003, Mr. Enlander made it impossible for her to actually pursue any claims that accrued prior to June 29, 2007 when he, among other things, repeatedly threatened her with deportation and continuously monitored her whereabouts. (*See* Compl. ¶¶ 64, 69, 71.)   Ms. Wang could not have reasonably pursued legal recourse against Mr. Enlander until she finally left his home in 2011.[4]

---

[3] Ms. Wang's state law claims, as discussed *infra,* are timely.  Even assuming they are not, they should be equitably tolled for the same reasons discussed here.

[4] To the extent the Court cannot make a determination on the issue of equitable tolling on the basis of Ms. Wang's complaint alone, Ms. Wang is entitled to a hearing.  *See Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000) (*quoting Vasquez v. Greiner*, 68 F. Supp. 2d 307, 311 (S.D.N.Y. 1999) ("equitable tolling could only be determined 'after an in-court hearing'")).  The evidence will show that Ms. Wang did not obtain a T-Visa, a visa for victims of trafficking, until October 2014, after she escaped Mr. Enlander's home in 2011.  Only after securing legal status in this country could she pursue her claims without fear of deportation and imprisonment. Further, it was not until 2017 that she was introduced to undersigned *pro bono* counsel who educated her on her claims under the TVPRA.

**C.     All TVPRA Claims Relating to Conduct After June 29, 2007 Are Sufficiently Pled (Counts 1-3)**

    *1.     Conduct after June 29, 2007 is connected to entirety of the trafficking scheme that spanned from the initial recruitment of Ms. Wang to work for the Enlanders in 1999, as discussed in Section B, supra.*

The entire period covered in the complaint, from the recruitment of Ms. Wang by Mrs. Enlander at Rafael's Salon, to the moment Ms. Wang was finally able to detach herself from Derek and flee in August 2011, is one scheme, plan, and pattern intended by the Enlanders to obtain the labor and services of Ms. Wang for free. Specific acts at any given time cannot be considered independently from the rest, and Mr. Enlander points to no legal basis for truncating the facts in Ms. Wang's complaint. To the contrary, the TVPRA provides a civil remedy "against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)." 18 U.S.C. § 1595. The complaint demonstrates Mr. Enlander both knowingly benefited, through a joint venture with Mrs. Enlander, from violations of the TVPRA and was the perpetrator. His exploitative behavior, as the complaint makes clear, was continuous from 1999 through 2011.

The trauma bonds that formed as a result of the coercive pattern of behaviors by the Enlanders reveal the connective threads throughout the entire length of the complaint. After Mrs. Enlander passed away, Mr. Enlander continued to exploit the trauma bonds that had formed between Ms. Wang and his wife, to push Ms. Wang deeper into a psychologically broken and submissive state. He sexually and psychologically abused Ms. Wang, holding her in a state of perpetual fear and anxiety to force her to continue providing labor and services. (Compl. ¶¶ 71-84).

8

> **2.** *Even looking at defendant's conduct after June 29, 2007, sufficient facts are pled for claims of involuntary servitude and forced labor under the liberal federal pleading standards.*

18 U.S.C. §1589(a) provides in relevant part:

> Whoever knowingly provides or obtains the labor or services of a person by any one of . . . the following means: (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint . . .

"Serious harm" is defined as:

> [A]ny harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

18 U.S.C. §1589(c)(2).

For purposes of a TVPRA claim, "'[s]erious harm' includes threats of any consequences, whether physical or non-physical, that are sufficient under all of the surrounding circumstances to compel or coerce a reasonable person in the same situation to provide or to continue providing labor or services." *Aguirre v. Best Care Agency, Inc.,* 961 F. Supp. 2d 427, 443 (E.D.N.Y. 2013) (citations omitted).

A hybrid standard is used to determine whether an employer's conduct was sufficiently serious to coerce the victim to provide labor or services against her will, considering the particular vulnerabilities of the victim as well as the victim's objectively reasonable acquiescence. *United States v. Rivera*, 799 F.3d 180, 186-87 (2d Cir. 2015). The Court in *Kozminski* also took into account the victim's special vulnerabilities, such as

9

immigration status. 487 U.S. at 948. There are no dispositive markers of forced labor or involuntary servitude, though among those commonly seen are threats of harm upon the victim or others, and exploitation of the victim's lack of familiarity with the English language and their legal rights under U.S. laws, which are used to prevent vulnerable victims from leaving forced labor situations. *Muchira v. Al-Rawaf*, 850 F.3d 605, 618-19 (4th Cir. 2017) (citations omitted).

Even if the Court were to completely disconnect Mr. Enlander's conduct before and after June 29, 2007, Ms. Wang's particular vulnerabilities, including her lack of immigration status, unfamiliarity with the English language and American culture, and the trauma bonding from repeated rape and sexual assault by his wife, were known to Mr. Enlander. It is implausible that he was unaware his wife was having sexual relations with a woman living in his own home for years. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (directing courts to draw on common sense in reviewing 12(b)(6) motions). Not only were Ms. Wang's vulnerabilities known to the defendant, he actively participated in the scheme, plan, and pattern intended to bring Ms. Wang to a psychological state wherein she could not disassociate from him and felt she had to obey every beck and call. These were precisely the types of "increasingly subtle" tactics that Congress and the Courts have recognized as being used by traffickers to exert control. *United States v. Dann,* 652 F.3d 1160, 1169 (9th Cir. 2011) (internal citations omitted).

Defendant leveraged the very psychological bonds he had participated in creating to force Ms. Wang to provide labor and services. He used physical force, through rape and sexual assault, to instill fear and exert control. (Compl. ¶ 77). He used gaslighting techniques intended to cause Ms. Wang to fear for her life and lose her sense of reality by

10

sending disturbing and threatening emails.  (Compl. ¶¶ 78-82); *cf., Franco v. Diaz,* 51 F. Supp. 3d 235 (E.D.N.Y. 2014) (defendant used coercive tactics, including derogatory remarks to the plaintiff and online threats).  Though Ms. Wang was at times employed outside of her work for the defendant, Derek interfered with her outside social contacts to the point that she became isolated and dependent on him.  (Compl. ¶ 84).

In addition to the actual serious physical and psychological harm Ms. Wang suffered as described above, she was made to fear serious financial and reputational harm to prevent her from leaving the defendant's employ.  *See* 18 U.S.C.S. §1589(c)(2).  Ms. Wang feared she would suffer serious financial harm by being forced to forfeit all the money she had earned but had not received, as well as all the money she had spent out of pocket to serve the Enlanders' needs since 1999.  Even after June 29, 2007, Ms. Wang asked Derek for payment of her wages and he made promises to repay her.  (Compl. ¶¶ 66, 74-75); *cf US v. Dann*, No. C 08-00390, 2009 U.S. Dist. LEXIS 122774, at *2 (N.D. Cal. Dec. 23, 2009) (inferences including false promises to pay and debt imposed on victim were sufficient for fact finder to find that defendants intended to make victim believe she would suffer financial harm of losing her wages).

Reputational harm is also one of the forms of harm used by traffickers to compel the labor of their victims.  *See, e.g., Antonatos v. Waraich*, No. 12-CV-1905, 2013 U.S. Dist. LEXIS 121485, at *6 (D.S.C. Aug. 27, 2013) (trafficking claim involving professional reputational harm survived dismissal).  Given her conservative Chinese cultural background, Ms. Wang feared irreparable reputational harm from her sexual relations with a woman, which had been forced upon her, being revealed to her family.  (Compl. ¶ 81).  Ms. Wang's fear of reputational harm was reasonable, given how quick

Derek was to humiliate Ms. Wang by making degrading and obscene references to her sexuality, and that the Enlanders had extracted Ms. Wang's family's contact information in China, and had in fact contacted the family in the past.  (Compl. ¶¶ 41, 59, 81).

Ms. Wang's fear of serious harm, which compelled her to remain in the defendant's employ, were objectively reasonable.  Defendant implies that because Ms. Wang is educated and was seemingly independent; her inability to leave the situation was unreasonable.  However, being educated and theoretically having the ability to be independent does not preclude being subjected to involuntary servitude and forced labor. *See, e.g., Walia v. Veritas Healthcare Solutions, L.L.C.*, No. 13-CV-6935, 2015 U.S. Dist. LEXIS 105429 (S.D.N.Y. Aug. 11, 2015) (plaintiff had master's degree in pharmacy); *Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427 (E.D.N.Y. 2013) (plaintiff had an accounting degree); *Antonatos*, 2013 U.S. Dist. LEXIS 121485 (plaintiff was a doctor who came on a special visa program for physicians).

In short, Ms. Wang has alleged sufficient facts to allow for the inference that even after June 29, 2007, defendant used force, serious harm, and a scheme to cause Ms. Wang to fear serious harm to force her to provide labor and services, and her claims under the TVPRA for all time periods covered in the complaint are viable as a matter of law.

**D.   Ms. Wang's Common Law Fraud and Conspiracy Claims Are Timely and Properly Pled (Counts 4-5)**

*1.    Ms. Wang's Common Law Fraud and Conspiracy Claims are Timely*

As Mr. Enlander concedes (Def. Mem. of Law. ¶ 52.), the statute of limitations for fraud is six years from the date the cause of action accrued. *Squitieri v. Trapani*, 107 A.D.3d 688, 688 (N.Y. App. Div. 2013).  In New York, a claim based on continuous fraudulent misrepresentations accrues on the date of the last fraudulent act. *Lim v. Kolk*,

111 A.D.3d 518, 519 (N.Y. App. Div. 2013) ("the fraud cause of action accrued . . . when the last allegedly fraudulent check was issued").   After Caron's death, Mr. Enlander continued to fraudulently misrepresent to Ms. Wang that he would pay her for her labor (Compl. ¶ 74), with the last misrepresentation occurring August 2011 (Compl. ¶ 85), when he recruited Ms. Wang to work at his private medical practice and promised to pay her $125 per massage session.   As a result, Ms. Wang's claim of fraud, and conspiracy to commit fraud, did not expire until August 2017, and are timely.

### 2.   *Ms. Wang pleads justifiable reliance*

The element of justifiable reliance is typically "not subject to summary disposition," and Mr. Enlander offers no reason why this Court should invade the providence of the jury.   *Brunetti v. Musallan*, 11 A.D.3d 280, 281 (N.Y. App. Div. 2004); *see also*, *Segal v. Cooper*, 49 A.D.3d 467, 467 (N.Y. App. Div. 2008) ("whether plaintiff's reliance upon defendants' alleged misrepresentations was reasonable is a factual issue not to be resolved on a motion direct at the pleadings").   Mr. Enlander instead turns this case on its head by claiming that, despite a countless barrage of misrepresentations that pay was forthcoming (Compl. ¶¶ 25, 74, 75, 85), sponsorship for a green card would be offered (Compl. ¶ 59), and Ms. Wang would be taken care of "like family" (Compl. ¶ 78), Ms. Wang was supposed to intuit that he would not ultimately uphold his word after extracting around-the-clock services from her.   This argument is specious when Mr. Enlander demonstrated to Ms. Wang that he himself was a self-made, hardworking doctor, who had no reason not to pay the hired help.   (Compl. ¶¶ 26, 60.)

The only justification Mr. Enlander offers for lack of reasonable reliance is Ms. Wang's educational background and ability to care for herself as a functional adult.   (*See* Def. Mem. of Law, ¶ 54.)   This argument is unavailing when any person performing

labor and services would reasonably expect to be paid, and in any case, should be a question for the jury. To hold otherwise would result in a narrow reading of the complaint that ignores issues of fact not proper for disposal on a motion to dismiss and before any discovery has taken place.

### E.  Ms. Wang's Breach of Contract Claims are Timely (Count 6)

Under New York law, a breach of contract claim on the grounds of failure to remit recurring obligations for payment accrues each time the defendant fails to pay.[5] *Sirico v. F.G.G. Productions, Inc.*, 71 A.D.3d 429 (1st Dep't 2010), is instructive. There, the plaintiff sued in 2005 for royalties that had accrued over 40 years under a contract dating from the 1960s. *Id.* at 430. The First Department held plaintiff's claim for royalties "accrued each time [defendant] allegedly breached its recurring obligation" and were viable at the "preliminary stage" of litigation. *Id.*; *see also*, *ABKCO Music & Records Inc. v. Chimeron LLC*, 517 Fed. Appx. 3, 5 (2d Cir 2013) (applying New York law, "each failure to pay would constitute a separate breach"); *Beller v. William Penn Life Ins. Co. of New York*, 8 A.D.3d 310, 314 (N.Y. App. Div. 2004) ("where a contract provides for continuing performance over a period of time, each breach may begin the running of the statute anew such that accrual occurs continuously").

Mr. Enlander's final breach of his promise to pay Ms. Wang wages occurred in August 2011. (Compl. ¶ 85.) Ms. Wang's claims, which were brought before August 2017, are therefore timely. Mr. Enlander's claims that he could not have known about

---

[5] It is noted that Ms. Wang's oral contract with the Enlanders is not covered by the Statute of Frauds because it was an at-will employment agreement, albeit a one-sided one. *See Caruso v. Malang*, 250 A.D.2d 800, 800-01 (N.Y. App. Div. 1998) (oral, at-will employment agreement not subject to Statute of Frauds because it is "capable of being performed within one year").

any verbal agreement to pay Ms. Wang (Def. Mem. of Law ¶ 63) flies in the face of the allegations of the complaint and any reasonable inferences that can be drawn from them. Mr. Enlander interacted with Ms. Wang as her boss and captor on a daily basis, instructing her to provide spa treatments and massages for him for numerous hours at a time and to run his personal errands. (Compl. ¶¶ 18, 21, 21, 31, 32, 76, 79.)  He was acutely aware that he owed Ms. Wang renumeration for her decade of labor and services, attempting to give her a piece of artwork to sell in lieu of payment and ultimately recruiting her to provide physical therapy and massage services at his private practice at $125 per hour.  (Compl. ¶¶ 25, 74, 75, 85.)  Ms. Wang is entitled to discovery on when and how Mr. Enlander was informed by Mrs. Enlander that Ms. Wang was coming to their home to be their live-in servant and masseuse.

**F.    Ms. Wang's Quasi-Contract Claims Are Likewise Timely under the Six-Year Statute of Limitations (Counts 7-8)**

*1.    The Six Year Statute of Limitations Applies to Ms. Wang's Quasi-Contract Claims*

Courts apply the three-year limitations period only to cases where plaintiffs are strictly seeking monetary damages, such as money from sale of share proceeds or proceeds from sale of real property.  *See, e.g. Ingrami v Rovner,* 45 AD3d 806, 808 (N.Y. App. Div. 2007)(plaintiff sought to recover the return on his investment and his share of the sale proceeds of business venture); *DiMatteo v Cosentino,* 71 A.D.3d 1430, 1431 (N.Y. App. Div. 2010) (plaintiff sought to recover his alleged share of the proceeds remaining from the sale of a parcel of real property).

In contrast, the relief Ms. Wang seeks through her quasi-contract claims is restitution, which is equitable in nature.  Ms. Wang's provision of unpaid labor, services, loans, and out-of-pocket expenses all contributed towards the Enlanders' respective

businesses and financial success, from which the Enlanders unjustly gained.  The relief sought is to return Ms. Wang to the position that she was in before the wrongful act or breach occurred (*i.e.*, restitution).  To do so, Ms. Wang should be awarded an amount equal to the gains or profits unlawfully earned and unjustly gained by the Enlanders during the period of Ms. Wang's contributions.  *See, e.g., Sirico v. F.G.G. Prods., Inc.,* 71 A.D.3d 429, 435 (N.Y. App. Div. 2010) (plaintiffs' claim was for unpaid royalties, which was money that belonged to plaintiffs but was never given over to them), *Helfland v. Sessler*, 194 Misc. 2d 38, 40 (Civ. Ct., N.Y. County 2002) (plaintiff sought to recover the overcharged rent that was given to tenant, which should have been paid for by the defendant).

> 2.    *The Quasi-Contract Claims Accrued Each Time Mr. Enlander Promised Repayment*

As Mr. Enlander's own cases demonstrate, and as discussed in Section E, *supra*, claims for unjust enrichment and quantum meruit accrued each time Mr. Enlander promised repayment.  *See, e.g., Ingrami v. Rovner,* 45 AD3d 806, 808 (N.Y. App. Div. 2007) (court found action for unjust enrichment related to investment induced by material misrepresentations accrued when investment was made rather than when the misrepresentation was discovered), *Williams-Guillaume v. Bank of America, N.A.*, 130 A.D.3d 1016, 1017 (N.Y. App. Div. 2015) (unjust enrichment claim accured when the loan was issued, not when the allegedly forged documents were discovered).  The last time Mr. Enlander accept Ms. Wang's labor, services, and loans and was unjustly enriched was August 2011.  Ms. Wang's quasi-contract claims therefore did not expire until August 2017.

16

## IV.    CONCLUSION

Mr. Enlander's motion to dismiss asks this Court to view each fact in isolation, when Ms. Wang's complaint repeatedly pleads an overarching scheme, plan, and pattern spanning over a decade by Mr. Enlander to manipulate and coerce her into indentured servitude.   This is nothing but a ruse to obfuscate the severity of Mr. Enlander's exploitative behavior, and a gambit to try to slide the case into arbitrary statute of limitations periods to avoid liability for the years of free labor and services he enjoyed. The motion to dismiss must therefore be denied.  To hold otherwise would not only result in a reading of the complaint in the light most favorable to the *defendant*—not plaintiff—but a miscarriage of justice.

Dated: September 28, 2017
        New York, New York

/s/ S. Sherry Xia
S. Sherry Xia
Jordan M. Smith
AKERMAN LLP
666 Fifth Avenue, 20th Floor
New York, NY 10103
Telephone: (212) 880-3800
Facsimile: (212) 905-6400
sherry.xia@akerman.com
jordan.smith@akerman.com

-and-

Dahsong Kim
ASIAN AMERICAN LEGAL DEFENSE AND
EDUCATION FUND
99 Hudson Street, 12th Floor
New York, NY 10013
Telephone: (212) 966-5932
Fascimile: (212) 966-4303
skim@aaldef.org

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 28, 2017, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

                         ____/s/ S. Sherry Xia_____

                         S. Sherry Xia
                         Jordan M. Smith
                         AKERMAN LLP
                         666 Fifth Avenue, 20th Floor
                         New York, NY 10103
                         Telephone: (212) 880-3800
                         Facsimile: (212) 905-6400
                         sherry.xia@akerman.com
                         jordan.smith@akerman.com