USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/6/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                    :
HONGXIA WANG,                           :
                           Plaintiff,   :
                                                    :     17 Civ. 4932 (LGS)
              -against-                 :
                                                      :     **OPINION AND ORDER**
DEREK ENLANDER,                     :
                           Defendant.  :
                                                      :
                                                      :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

       Plaintiff Hongxia Wang sues Defendant Derek Enlander for violations of federal and New York law that arose from an alleged scheme to obtain Plaintiff's free labor and money from 1999 to 2011. The Complaint alleges claims under the Trafficking Victims Protection Reauthorization Act (the "TVPRA"), 18 U.S.C. § 1584 et seq., for involuntary servitude, forced labor and trafficking into servitude and under New York common law for breach of contract, quantum meruit, unjust enrichment, fraud and conspiracy. Defendant moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). The motion is granted in part and denied in part.

### I.   BACKGROUND

       The following alleged facts are drawn from the Complaint and are accepted as true for purposes of this motion. The facts are construed, and all reasonable inferences are drawn, in favor of Plaintiff as the non-moving party. *See Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

       Plaintiff, a college-educated China-native, immigrated to the United States from China in February 1997 and moved to New York in May 1997. Her English proficiency was "limited."

Plaintiff and Defendant's wife, non-party and decedent Caron Enlander, met around January 1999. Plaintiff was working at a nail and hair salon in New York City, where Caron sought out Plaintiff's services for manicures, pedicures and massages. Caron called the salon about once a week to ask Plaintiff to make deliveries for her jewelry business, Caron Joailliere.

In or around March 1999, Plaintiff went to work at Caron Joailliere, one day per week, as Caron's assistant. Plaintiff was promised $8.00 per hour. After about a month as Caron's assistant, Caron hired Plaintiff to work in her and Defendant's home to provide private spa treatments, including manicures, pedicures, facials and massages. Plaintiff was promised $80.00 per hour.

In the fall through spring of 1999, the Enlanders' demands grew and began interfering with Plaintiff's job at the salon. For example, they coaxed Plaintiff into going to their Hamptons home to be their full-time, live-in masseuse. There, the Enlanders isolated Plaintiff and made her sleep on the floor.

After being fired from the salon in November 1999, Plaintiff went to work for the Enlanders full-time. By that time, Plaintiff already had worked over 1,500 hours at Caron Joailliere and in the Enlanders' home but had been paid only $80.00. Plaintiff also incurred unreimbursed out-of-pocket expenses. The Enlanders manipulated Plaintiff into believing that they would pay and reimburse her in the future, when their finances were better.

From December 1999 to January 2003, Plaintiff "catered to the Enlanders' every need," working at least 18 hours per day without a day off or any "true breaks." Plaintiff generally slept on the couch or floor of the Enlanders' home. Although Plaintiff kept an apartment in Queens, the Enlanders allowed her to go home only to change her clothes and eat breakfast. The Enlanders monitored her closely and wanted to know her whereabouts at all times. They isolated

her by prohibiting her from talking to others and monopolizing all of her time.

Caron called Plaintiff offensive names and "repeatedly threatened to kill [Plaintiff] if she was ever disloyal or left the Enlanders." Plaintiff thought that these threats were credible because Caron regularly carried a gun, and the Enlanders reminded Plaintiff that they traveled to Asia "often," which Plaintiff understood to be a veiled threat to hurt her family.

Caron routinely sexually abused Plaintiff. On one occasion, Caron said to Plaintiff, who had just showered, "[L]et me see what you look like." She touched Plaintiff's breasts and private parts. Defendant was aware of the abuse, did not intervene and used it to shame her.

Plaintiff tolerated the Enlanders' abuse, in part, because the Enlanders promised her that they would get her and her daughter (who was still in China) green cards, that they would get Plaintiff a home near Caron and that they would pay Plaintiff for her labor and reimburse her for out-of-pocket expenses and loans. The Enlanders made these false promises to induce Plaintiff to work for free and deter her from leaving.

In or around January 2003, Plaintiff fled from the Enlanders, and "refus[ed] to go back . . . despite calls from Caron . . . asking her to return." Plaintiff contacted an attorney who sent the Enlanders a demand letter for non-payment of wages on or around February 19, 2003. In response, the Enlanders "bombarded [Plaintiff] with threats of deportation," "harassed her on a daily basis" and "schedule[d] a moving company to show up at [Plaintiff's] door." Plaintiff decided not to pursue legal action and sent the Enlanders flowers and $1,500.00 as an apology.

Thereafter, Caron insisted that Plaintiff invest $500.00 to $2000.00 per month in Caron's jewelry business, which she did. It is not clear from the Complaint whether the approximately $33,400.00 that Plaintiff gave the Enlanders between 2003 and 2006 was intended to be an "investment" or a loan.

3

From May 2006 -- when Plaintiff learned that Caron had died -- to August 2011, Plaintiff worked for Defendant, who manipulated, coerced, psychologically and physically abused and raped her. The Complaint implies that Plaintiff did not live with Defendant; but Defendant monitored her whereabouts and sent her "hostile, threatening, and disturbing emails and instant messages" at night.

When Plaintiff asked Defendant to pay her back wages and repay the loans, Defendant said that he was "thinking about it." Plaintiff thought that Defendant would not pay her if she did not continue working for him. Plaintiff incurred out-of-pocket expenses running errands for Defendant.

From July 2006 to August 2011, Plaintiff worked approximately 2,500 hours for which she was never paid. Plaintiff also was promised $125.00 per session to provide massages and acupuncture to Defendant's physical therapy patients; but she was paid for only three of five sessions, or $375.00. Plaintiff fled from Defendant in August 2011.

## II. STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the non-moving party's favor, *Trs. of Upstate N.Y. Eng'rs Pension Fund*, 843 F.3d at 566, but gives "no effect to legal conclusions couched as factual allegations," *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (internal quotation marks omitted). The pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

Because the statute of limitations is an affirmative defense, Defendants carry the burden of showing that Plaintiffs failed to plead timely claims. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("The lapse of a limitations period is an affirmative defense that a defendant must plead and prove." (citing Fed. R. Civ. P. 8(c)(1))). Dismissal based on an affirmative defense at the complaint stage is warranted only if "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Id*. at 426 (emphasis and internal quotation marks omitted); *accord Ellul v. Congregation of Christian Bros*., 774 F.3d 791, 798 n.12 (2d Cir. 2014).

New York law applies to the state law claims because the parties' briefs assume that it does. "'[S]uch implied consent is . . . sufficient to establish the applicable choice of law.'" *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017) (quoting *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009)).

### III. DISCUSSION

#### A. TVPRA Claims

The Complaint alleges claims under TVPRA § 1584 (involuntary servitude), § 1589 (forced labor) and § 1590 (trafficking into servitude) for conduct that occurred between 1999 and 2011. Plaintiff commenced this action on June 30, 2017. Defendant moves to dismiss claims arising out of conduct before June 29, 2007 as time barred, and conduct after that date for failure to state a claim. The motion is granted in part: the § 1584 and § 1590 claims are limited to conduct occurring on or after December 19, 2003; and the § 1589 claim is limited to conduct occurring on or after December 23, 2008.

1. **TVPRA Statute of Limitations**

    a. **Applicable Law**

Congress enacted the Trafficking Victims Protection Act in 2000. Pub. L. 106-386. The law was amended by the TVPRA in 2003, which created a civil private right of action for violations of § 1589, § 1590 and § 1591, but as relevant here, not § 1584. *See* 18 U.S.C. § 1595, Pub. L. 108-193, § 4(a)(4)(A), Dec. 19, 2003, 117 Stat. 2878 (effective Dec. 19, 2003, to Dec. 22, 2008). As the 2003 version of the statute did not include a statute of limitations, TVPRA civil claims were subject to the default four-year statute of limitations in 28 U.S.C. § 1658. In 2008, Congress amended the TVPRA to broaden the scope of possible civil claims to any "violation of this chapter" and adopted a ten-year statute of limitations. 18 U.S.C. §§ 1595(a), (c).

The Second Circuit explicitly has held that the amendment that created a private cause of action under the TVPRA does not apply retroactively because it "increases a party's liability for previously occurring conduct." *Velez v. Sanchez*, 693 F.3d 308, 324-25 (2d Cir. 2012) (affirming dismissal of TVPRA claims on that basis). Consequently, violations of § 1589 and § 1590 cannot be based on conduct that occurred before December 19, 2003, and violations of § 1584 cannot be based on conduct that occurred prior to December 23, 2008.

The ten-year limitations period under the TVPRA begins to run when "the cause of action arose." 18 U.S.C. § 1595. For typical claims based on conduct arising in tort, a cause of action accrues when the wrongful conduct occurs (or when the last element of the cause of action occurs). *City Store Gates Mfg. Corp. v. Empire Rolling Steel Gates Corp.*, 979 N.Y.S.2d 606, 607 (2014) ("With respect to tort claims, accrual occurs when the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in the complaint . . . ." (internal

quotation marks and citations omitted)).  The limitations period may be tolled or extended under principles of equitable tolling if the party seeking tolling establishes "two elements: (1) that [s]he has been pursuing h[er] rights diligently, and (2) that some extraordinary circumstance stood in [her] way."  *Watson v. United States*, 865 F.3d 123, 132 (2d Cir. 2017) (internal quotation marks omitted).  To satisfy the diligence requirement in the first element, a plaintiff must "demonstrate that [she] did not discover [her human trafficking] cause of action -- and *could not* have discovered it with due diligence -- until less than ten years before bringing suit."  *Ellul*, 774 F.3d at 800 (affirming dismissal where "plaintiffs were aware of all the necessary elements of a cause of action for human trafficking long before" the event they allege triggered knowledge of their claim).  The "extraordinary circumstance" in the second element refers "to the severity of the obstacle impeding compliance with a limitations period."  *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011).

As noted, a claim may be dismissed based on the statute of limitations only if it is clear on the face of the complaint that the claim is untimely as a matter of law.  *Staehr*, 547 F.3d at 425.  Given the possibility of equitable tolling, a TVPRA claim is subject to dismissal based on a statute of limitations defense only if the complaint makes clear that the alleged wrongful conduct arose more than ten years before the claim was filed, and that the plaintiff has not been pursuing her rights diligently, and that no extraordinary circumstance stood in her way.  *See Ellul*, 774 F.3d at 800.

### b. Application of Statute of Limitations to the TVPRA Claims

Plaintiff's claim for involuntary servitude under § 1584 is limited to conduct that occurred on or after December 23, 2008, when the § 1584 private right of action was created; and the claim is dismissed to the extent that it is based on earlier conduct.  The TVPRA does not

7

apply retroactively to conduct that predated the creation of the private right of action. *See Velez*, 693 F.3d at 324–25. The § 1584 claim is not further curtailed by the ten-year statute of limitations because December 2008 is within the ten-year statute of limitations period, which commenced June 30, 2007, or ten years before this action was filed.

Plaintiff's forced labor and trafficking claims under § 1589 and § 1590, respectively, similarly are limited to conduct that occurred on or after December 19, 2003, when a private cause of action for these claims was first recognized. *See id*. Defendant may argue later, based on evidence, that the ten-year statute of limitations further limits these claims to conduct that occurred beginning June 30, 2007, ten years before this action was filed. At the pleading stage, however, dismissal of the § 1589 and § 1590 claims is not warranted because it is not clear from the face of the Complaint that equitable tolling does not apply. *See Ellul*, 774 F.3d at 800. Specifically, nothing in the Complaint conclusively establishes that Plaintiff had or could have discovered her § 1589 and § 1590 claims before June 30, 2007. Although Plaintiff consulted a lawyer in early 2003, the legal advice apparently was limited to a claim for non-payment of wages, and Defendant and his wife allegedly coerced and harassed Plaintiff into abandoning her claims. Likewise, it is not clear from the face of the Complaint that no "extraordinary circumstance" prevented Plaintiff from asserting her forced labor and trafficking claims. *Harper*, 648 F.3d at 137. To the contrary, the Complaint alleges that, between December 2003 and June 2007, Plaintiff was the victim of coercion, manipulation, threats, physical assault and monitoring, and that she did not free herself from the Defendant's control until August 2011. Assuming for purposes of this motion that the statute of limitations was tolled until August 2011, Plaintiff's § 1589 and § 1590 claims are timely with respect to conduct that occurred on or after December 19, 2003.

### 2. TVPRA Sufficiency of Pleading

The TVPRA causes of action under § 1584 (involuntary servitude), § 1589 (forced labor) and § 1590 (trafficking into servitude), as limited to the time periods stated above, are sufficient to state a claim.

#### a. The Involuntary Servitude and Forced Labor Claims

The Complaint alleges facts sufficient to support a claim for forced labor in violation of § 1589 for the period July 2006 to August 2011 (the period during which the Complaint contends that Plaintiff performed uncompensated services for Defendant), and § 1584 for the period December 23, 2008 (the date when this civil cause of action was first recognized) to August 2011 (when she left Defendant's employ).

> Section 1589 prohibits:
>
> knowingly . . . obtain[ing] the labor or services of a person by any one of, or by any combination of, the following means -- (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint . . . . 18 U.S.C. § 1589(a).

"[S]erious harm" is defined as:

> any harm, whether physical or nonphysical, including psychological, financial or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm. 18 U.S.C. § 1589(c)(2).

Section 1584 prohibits "knowingly and willfully hold[ing] to involuntary servitude . . . any other person for any term." 18 U.S.C. § 1584(a). This provision is violated by the creation of "'a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or

9

the legal process . . . .'" *McGarry v. Pallito*, 687 F.3d 505, 511 (2d Cir. 2012) (quoting *United States v. Kozminski*, 487 U.S. 931, 952 (1988)).

To determine whether an employer's conduct was sufficiently serious to coerce a plaintiff to provide labor against her will, the Second Circuit applies a "hybrid standard." *United States v. Rivera*, 799 F.3d 180, 186–87 (2d Cir. 2015). A factfinder may "consider the particular vulnerabilities of a person in the victim's position but . . . her acquiescence [must] be objectively reasonable under the circumstances," taking into consideration whether "a reasonable person of the same background and circumstances would have also felt coerced." *Id.*

The Complaint alleges that Defendant coerced Plaintiff to work for him from 2006 to 2011, principally through physical violence and threats of physical violence, including sexual assault and rape; that Defendant sent Plaintiff "hostile, threatening, and disturbing emails and instant messages" and "caus[ed] her to believe that she would suffer serious bodily harm if she did not continue to work for [Defendant]"; and that she was psychologically vulnerable. The Complaint pleads sufficient facts to suggest that a reasonable person in Plaintiff's circumstances would continue to work for Defendant to avoid being physically and psychologically harmed. The Complaint accordingly states claims under §§ 1589 and 1584. *See Walia v. Veritas Healthcare Sols., L.L.C.*, No. 13 Civ. 6935, 2015 WL 4743542, at *4 (S.D.N.Y. Aug. 11, 2015) (denying motion to dismiss claims of involuntary servitude and forced labor where the complaint alleged that plaintiff was "threatened, mentally tortured, and stalked and under constant threat of his life" (internal quotation marks and alterations omitted)).

### b. The Trafficking Claim

Section 1590 of the TVPRA, which concerns trafficking, extends liability to any person who "knowingly recruits, harbors, transports, provides, or obtains by any means, any person for

10

labor or services in violation of this chapter . . . ." 18 U.S.C. § 1590(a). This provision, by its terms, is directed at the person who places the victim in a situation of involuntary servitude -- in contrast to § 1589 which is directed at the person who obtains the forced labor; and § 1584 which is directed at the person who keeps the victim in servitude.

The statutory term in § 1590 that is most relevant here is "recruits." The dictionary definition of "recruit" is consistent with this reading of § 1590 and includes "to secure the services of," MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/recruit, and "persuade to do or help with something," OXFORD DICTIONARIES, https://en.oxforddictionaries.com/definition/recruit. *See generally Smith v. United States*, 508 U.S. 223, 228 (1993) ("When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning.").

The Complaint alleges sufficient facts to state a claim under § 1590. The Complaint expressly alleges that Defendant "recruited [Plaintiff] to work for him again by exploiting the same tactics of fraud, manipulation, coercion, physical assault and monitoring." The Complaint then details demands for services, sexual and psychological exploitation, financial pressure, insults and social isolation to which Defendant allegedly subjected Plaintiff in order to secure her services. The Complaint further alleges that Defendant recruited Plaintiff to resume working for him after Caron's death in May 2006. This is within the statute of limitations period, as discussed above.

In sum, the motion to dismiss the § 1584 and § 1590 claims is granted as to conduct before December 19, 2003, but otherwise is denied; and the motion to dismiss the § 1589 claim is granted as to conduct before December 23, 2008, but otherwise is denied.

### B. Breach of Contract

The Complaint asserts a breach of contract claim based on two theories -- Defendant's alleged breach of the parties' at-will employment agreement, and breach of a promise to repay monthly loans that Plaintiff made to the Enlanders between 2003 and 2006. The motion to dismiss is granted only with respect to the failure to repay loans.

To plead breach of contract under New York law, Plaintiff must allege: "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (applying New York law; internal quotation marks omitted). To establish the existence of a contract, Plaintiff must show that there was "an offer, acceptance, consideration, mutual assent and intent to be bound." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 507 (2d Cir. 2009) (applying New York law; internal quotation marks omitted), *superseded by statute on other grounds*. "[A] contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the 'presumed' intention of the parties as indicated by their conduct." *Id.* at 506–07 (internal quotation marks omitted); *accord Andrews v. Sony/ATV Music Publ'g, LLC*, No. 15 Civ. 7544, 2017 WL 770614, at *4 (S.D.N.Y. Feb. 24, 2017) (applying New York law).

The six-year limitations period for breach of contract claims generally accrues upon breach. *See* CPLR §§ 203(a), 213(2). "An acknowledgement or promise to perform a previously defaulted contract must be in writing to re-start the statute of limitations." *Guilbert v. Gardener*, 480 F.3d 140, 149 (2d Cir. 2007). "If, however, a contract requires continuing performance over a period of time, each successive breach may begin the statute of limitations running anew." *Id.* at 150.

### 1. Employment Agreements

Even assuming that the Complaint alleges sufficient facts from which to infer the existence of a valid employment agreement between Plaintiff and the Enlanders beginning in 1999, that agreement terminated in 2003, when Plaintiff stopped working for the Enlanders and refused to return until 2006. Any claim arising out of Plaintiff's employment during the period 1999 to 2003 is barred by the six-year statute of limitations.

Regarding Plaintiff's second tour of work for Defendant beginning in 2006, the Complaint pleads sufficient facts to state a claim for breach of an implied contract. The Complaint alleges that, from 2006 to 2011, Plaintiff worked in Defendant's home; that Defendant supervised and directed Plaintiff's work; and that Defendant acknowledged, at least once, his obligation to pay Plaintiff. Drawing all reasonable inferences in Plaintiff's favor, these allegations are sufficient to support an inference that the parties intended to enter into an employment agreement whereby Plaintiff would be paid for her services.

Contrary to Defendant's assertion, the breach of contract claim is not barred by the statute of limitations. Where, as here, the Complaint alleges that Plaintiff and Defendant entered into an employment agreement that required continuing performance over the course of approximately five years, each failure to compensate Plaintiff constituted a breach that re-started the limitations period. Because Defendant's obligation to pay Plaintiff was continuing, the Complaint's claim based on Defendant's breach of that obligation -- as late as August 2011 and within six years of Plaintiff's initiating this action -- is timely. *See, e.g.*, *id.* at 143 (holding that plaintiff's breach of contract claim was timely where some of defendant's missed payments under the contract occurred outside of the limitations period); *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 261 (S.D.N.Y. 2008) (denying motion to dismiss because plaintiff sufficiently

alleged continuing breaches within the limitations period).

## 2. Loan Agreements

The motion to dismiss the breach of contract claim is granted with respect to Defendant's alleged promise to repay monthly loans Plaintiff made to the Enlanders for several reasons. First, the theory was abandoned because Plaintiff did not respond to Defendant's argument on this motion that the claim is untimely. *See e.g.*, *Arista Records, LLC v. Tkach*, 122 F. Supp. 3d 32, 38–39 (S.D.N.Y. 2015) (finding that when a party fails to oppose specific arguments, then the party waives those issues). Second, a claim to enforce any such promise is time-barred. The Complaint alleges that Plaintiff made these loans between 2003 and 2006, and that Defendant stated in May 2011 that he would repay Plaintiff. Because the Complaint does not allege that the parties agreed to any repayment terms when Plaintiff made the "loans," the only reasonable inferences are either that (1) there was no enforceable agreement at all because of the failure to agree to material terms;[1] or (2) assuming that there was a valid contract between Plaintiff and Defendant, it was in default by 2011. If the agreement was in default, any promise to revive the prior agreement to repay is unenforceable as the new agreement was not in writing, as is necessary to re-start the statute of limitations. *See Guilbert*, 480 F.3d at 150. Alternatively, assuming that Defendant's agreement to repay the loans with the proceeds of any art sale in May 2011 was supported by new consideration and was the basis for a new and separately enforceable contract, any claim for breach of that agreement expired six years later, in May 2017, one month

---

[1] For a valid contract to exist, there must have been a "meeting of the minds" between the parties regarding essential terms of the transaction. *See Cent. Fed. Sav., F.S.B. v. Nat'l Westminster Bank, U.S.A.*, 574 N.Y.S.2d 18, 19 (1st Dep't 1991) (citing *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher,* 417 N.E.2d 541 (N.Y. 1981)). "A term is 'essential' . . . if it seriously affects the rights and obligations of the parties." *Miller v. Tawil,* 165 F.Supp.2d 487, 494 (S.D.N.Y.2001) (quoting *Ginsberg Mach. Co. v. J. & H. Label Processing Corp.,* 341 F.2d 825, 828 (2d Cir. 1965)).

before this action was commenced.

The motion to dismiss the contract claim is granted as to the loan repayments, and the implied employment agreement that began in 2003, but denied as to the parties' implied employment agreement beginning in 2006.

**C. Quantum Meruit and Unjust Enrichment**

The Complaint asserts claims for quantum meruit and unjust enrichment based on Defendant's failure to compensate Plaintiff for her labor and reimburse her for loans. The motion to dismiss is granted only as to claims accruing before 2006.

Although the existence of a valid oral contract precludes recovery in quasi-contract, where, as here, "a bona fide dispute exists as to the existence of [a] contract, the plaintiff may proceed on both breach of contract and quasi-contract theories." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 587 (2d Cir. 2006) (quoting *Nakamura v. Fujii*, 677 N.Y.S.2d 113 (1st Dep't 1998). Courts "may analyze quantum meruit and unjust enrichment together as a single quasi contract claim" because "quantum meruit and unjust enrichment are not separate causes of action." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (relying on *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 768 F. Supp. 89, 96 (S.D.N.Y. 1991), *rev'd on other grounds*, 959 F.2d 425 (2d Cir. 1992)).

To plead unjust enrichment, "the plaintiff must allege that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012). "In order to recover in quantum meruit under New York law, a claimant must establish (1) the performance of services in good faith, (2) the

15

acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Mid-Hudson Catskill*, 418 F.3d at 175 (internal quotation marks omitted); *accord Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 523 (S.D.N.Y. 2017).

"The statute of limitations in New York for claims of unjust enrichment . . . is generally six years." *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 518 (2d Cir. 2001) (citing CPLR § 213(1)); *accord Abrams v. Life Med. Techs., Inc.*, 135 F. Supp. 3d 185, 195 (S.D.N.Y. 2015). Where, as here, Plaintiff's breach of contract and quasi-contract claims arise out of the same facts, the six-year limitations period applicable to contract claims applies. *See Maya NY, LLC v. Hagler*, 965 N.Y.S.2d 475, 477 (1st Dep't 2013). "Under New York law, the six-year limitations period for unjust enrichment accrues upon the occurrence of the wrongful act giving rise to a duty of restitution . . . ." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 364 (2d Cir. 2013) (internal quotation marks omitted); *accord Williams-Guillaume v. Bank of Am., N.A.*, 14 N.Y.S.3d 466, 469 (2d Dep't 2015).

Defendant moves to dismiss the unjust enrichment claim as untimely. The motion is granted as to the wage claims before 2006 and the loan repayment claims in their entirety. As the Enlanders accepted monies paid as alleged loans before 2006, the claim for repayment is barred by the six-year statute of limitations.

As to Plaintiff's second tour of employment for Defendant between 2006 and 2011, however, the Complaint pleads sufficient facts to suggest that Defendant accepted the benefit of Plaintiff's labor and refused to pay her as recently as August 2011 when she quit. Specifically, the Complaint alleges that (1) Plaintiff realized in August 2011 that Defendant "was never going to honor his promises" to pay her the money she was owed; and (2) Defendant failed to pay

16

Plaintiff for work performed at Defendant's medical practice. Drawing all reasonable inferences in Plaintiff's favor, the latest-in-time wrongful act pleaded in the Complaint occurred in August 2011, when Defendant accepted Plaintiff's services and failed (or refused) to pay her. As this action was commenced within six years of the latest-in-time wrongful act, which occurred in August 2011, the unjust enrichment claim is timely. *See Cohen*, 711 F.3d at 364 (holding that the unjust enrichment claim was time-barred because "[t]he latest-in-time wrongful act pleaded in the complaint occurred" outside of the six-year statute of limitations).

### D. Common Law Fraud

The Complaint alleges a claim for fraud based on the Enlanders' alleged false promises that they would pay Plaintiff and help her get a green card if she worked for them and loaned them money. The fraud claim is dismissed, first, because it is duplicative of the contract claims; second, as to conduct between 1999 and 2006, because it is untimely; and third, as to conduct between 2006 and 2011, because it fails to state a claim.

First, under New York law, where fraud and breach of contract claims are based on the same facts, a plaintiff must "(i) demonstrate a legal duty separate from the duty to perform under the contract, or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract, or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Guilbert*, 480 F.3d at 148 (internal quotation marks omitted); *accord Walia*, 2015 WL 4743542, at *7. Because the fraud claims are based on the same facts underlying the contract claim -- Defendant's alleged false promise to pay Plaintiff for the loans and her services -- the breach of contract and fraud claims merge.

Second, to the extent that the Complaint alleges fraud based on misstatements made between 1999 and 2003, the claim is time-barred. "[T]he New York statute of limitations for a

17

common law fraud claim is 'the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it.'" CPLR § 213(8); *accord Cohen*, 711 F.3d at 361 n. 3 (quoting the statute). As described above, in 2003, Plaintiff ceased working for the Enlanders, refused to return and retained a lawyer. Because the fraud claim as to these alleged misstatements accrued no later than January 2003, any claim based on these alleged misstatements is untimely.

Third, regarding alleged misstatements made between 2003 and 2006 -- during the period when Plaintiff was loaning and/or giving money to the Enlanders -- the fraud claim likewise is untimely. The Complaint alleges that the Enlanders made various misstatements until around June 2006, and that Plaintiff stopped sending them money some time in 2006. Any fraud claim involving the loans accrued in 2006, when Plaintiff stopped sending money to the Enlanders. Accordingly, any fraud claim as to these alleged misstatements is barred by the statute of limitations.

Fourth, regarding the period from mid-2006 to August 2011, the Complaint alleges that Defendant forced Plaintiff to work in his home by various means. Although the allegations are alarming, they do not allege that Defendant made any misstatements to induce Plaintiff to work for him. To the contrary, the Complaint alleges that Defendant used manipulative, coercive and abusive tactics to compel Plaintiff to work for him.

Lastly, the Complaint alleges that in 2011 Defendant invited Plaintiff to work at his private medical practice, falsely promising her $125.00 per session to perform acupuncture and massage therapy for Defendant's patients. The Complaint further alleges that Defendant paid Plaintiff for only three of the five sessions that she worked, or $375.00. This claim fails regardless of whether it is timely because the Complaint fails to allege any facts that the alleged

18

misstatement was untrue when made. *See Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (noting that under New York law, a claim of fraud requires "a misrepresentation or material omission of a fact which was false and known to be false by defendant"). To the contrary, the Complaint suggests that Defendant intended to pay, and did pay Plaintiff for three of the five sessions. To the extent that Defendant failed to fulfill his promise to pay Plaintiff for the remaining two sessions, this claim sounds in breach of contract, not fraud. For these reasons, the fraud claim is dismissed.

### E. Conspiracy to Defraud

The Complaint alleges conspiracy to defraud based on an alleged scheme to cause Plaintiff to work for the Enlanders without compensation or benefits. "New York does not recognize an independent tort of conspiracy." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006); *ACR Sys., Inc. v. Woori Bank*, 232 F. Supp. 3d 471, 478–79 (S.D.N.Y 2017). Because the Complaint fails to plead an actionable, underlying tort, the conspiracy claim is dismissed. *See e.g.*, *Kirch*, 449 F.3d at 401 (applying New York law, holding that "since ITTC fails to state causes of action for either of the torts underlying the alleged conspiracy . . . it necessarily fails to state an actionable claim for civil conspiracy"); *Carlson v. Am. Int'l Grp.*, 89 N.E.3d 490, 504 (N.Y. 2017) (dismissing conspiracy claim, in part, because "New York does not recognize a freestanding claim for conspiracy" and the plaintiff failed to state a claim for fraud).

### IV. CONCLUSION

Defendant's motion to dismiss the § 1584 and § 1590 claims is granted as to conduct before December 19, 2003, but otherwise is denied; and the motion to dismiss the § 1589 claim is granted as to conduct before December 23, 2008, but otherwise is denied. The motion to dismiss the contract claim is granted as to the loan repayments, and the implied employment

agreement that began in 2003, but denied as to the parties' implied employment agreement beginning in 2006.  The motion to dismiss the quasi-contract and unjust enrichment claims is granted as to the wage claims before 2006 and the loan repayment claims in their entirety, but denied as to the wage claims between 2006 and 2011.  The motion is granted as to each of the fraud claims.  The Clerk of Court is directed to close the motion at Docket No. 20.

Dated:  March 6, 2017
      New York, New York

                                              **LORNA G. SCHOFIELD**
                                        **UNITED STATES DISTRICT JUDGE**